814 A.2d 612

STATE OF NEW JERSEY IN THE INTEREST OF S.G.

Argued November 6, 2002—Decided January 27, 2003.

134

*Vincent P. Sarubbi,* Camden County Prosecutor, argued the cause for appellant, State of New Jersey (*Mr. Sarubbi,* attorney; *Nevan Soumilas* and *Jack L. Weinberg,* Assistant Prosecutors, on the briefs).

*Saul J. Steinberg* argued the cause for respondent, S.G. (*Sufrin Zucker Steinberg & Wixted,* attorneys).

*Susan Brody,* Assistant Deputy Public Defender, argued the cause for amicus curiae Office of the Public Defender (*Yvonne Smith Segars,* Public Defender, attorney).

*John P. McDonald* argued the cause for amicus curiae Association of Criminal Defense Lawyers of New Jersey (*McDonald, Rogers & Rizzolo,* attorneys).

The opinion of the Court was delivered by

LaVECCHIA, J.

In this case we consider whether a law firm may represent a defendant accused of shooting and killing another of the firm's clients. Our Rules of Professional Conduct (RPCs) prohibit an attorney from undertaking representation of a client when that representation will be directly adverse to the interests of another client. RPC 1.7(a). For a two-week period, members of the law firm involved here served as the attorney of record for the accused defendant and the victim. That simultaneous representation occurred because a deceased client continues to have interests that are entitled to the protection of the attorney-client relationship

until the representation is terminated consistent with our professional and procedural rules. We hold that, during the period of dual representation that occurred here, the interests of the two clients were adverse, resulting in a prohibited actual conflict. Accordingly, the firm may not proceed with the defense, notwithstanding the defendant's desire to consent to the representation.

## I.

Defendant, S.G., was charged with purposely or knowingly causing death or serious bodily injury resulting in death in violation of *N.J.S.A.* 2C:11-3(a). The charge arises out of the shooting death of Theodore J. Hilton (Hilton). We summarize the facts underlying that charge as presented by the investigating officer and accepted by the parties solely for the purpose of addressing the disqualification issue.

On August 1, 2001, a group of people congregated in the City of Camden at the intersection of Morton Street and Mt. Ephraim Avenue. The group had been at the intersection for approximately two hours when an altercation erupted between a man identified as "Woo" and a woman identified as "Shirley." Shirley left, only to return twenty minutes later accompanied by five men, one of who is alleged to be S.G. The men demanded that Woo apologize to Shirley. Woo apologized, and then Shirley and her five companions left. Approximately thirty minutes later, the person alleged to be S.G. returned to the intersection with a firearm and began shooting into the crowd, hitting Hilton in the neck. The assailant was not apprehended at the scene. The Camden Police commenced an investigation into the incident, considering the event to constitute an aggravated assault.

Hilton survived for seven days after the shooting. He died as a result of the gunshot wound on August 8, 2001. Coincidentally, on the same day, the Office of the Camden County Prosecutor intervened in the investigation and arrested S.G., who was seventeen years old at the time of the shooting. A Juvenile Delinquency Complaint was filed and shortly thereafter, on August 13, 2001,

the State moved to transfer the matter to the Law Division, Criminal Part, in order to prosecute S.G. as an adult.

On August 14, 2001, Saul Steinberg, Esquire, of Sufrin, Zucker, Steinberg, Waller & Wixted (the Sufrin firm), entered his appearance of record on behalf of S.G. According to Steinberg, S.G.'s sister approached him about representing S.G. in connection with the shooting charge, and he agreed to do so before he learned the identity of the victim. In a certification, Steinberg informs us that he had a long-standing relationship with S.G.'s family, and had represented S.G.'s aunt and grandmother in civil matters. In addition, one of S.G.'s aunts had provided housekeeping and babysitting services to Steinberg's family.

At the time Steinberg entered his appearance on behalf of S.G., Dennis Wixted, Esquire, also of the Sufrin firm, was serving as the attorney of record representing Hilton in connection with a narcotics charge that had been pending in the Law Division, Criminal Part, since May 18, 2001. That criminal charge was not dismissed until August 30, 2001, more than three weeks after Hilton's death and two weeks after Steinberg had entered his appearance commencing representation of S.G. Wixted remained counsel of record on behalf of Hilton until dismissal of the charge.

The Sufrin firm had represented the victim on a previous occasion. Several years earlier, Steinberg represented Hilton on another narcotics charge. The representation in that matter commenced on September 13, 1996, and continued through Hilton's plea and later sentencing on January 13, 1997.

In summary, the Sufrin firm represented Hilton in two separate criminal matters over a period of five years. The firm was in the midst of representing him on one of those criminal charges at the time he allegedly was killed by S.G., and continued representation of his interests for three weeks thereafter until that charge was dismissed due to his death. While that narcotics charge was still pending, the Sufrin firm undertook representation of S.G., who stood accused of Hilton's murder.

The State moved to disqualify the firm from representing S.G. on the basis of its current and prior representation of the victim. The trial court held a hearing and denied the motion, stating that "the representation clearly is over, [because] the victim, defense counsel's former client is now obviously deceased." The trial court did not address further the State's argument that an actual or potential actual conflict existed by virtue of the firm's representation of both S.G. and Hilton. Having found that no actual conflict was present, the court concluded that, at that time, there was no other conflict-of-interest ground that supported overriding defendant's right to counsel of his choice. The trial court left open, however, the prospect of addressing the conflict issue again as the case progressed.

On August 20, 2001, the trial court entered an order denying both the motion and the State's request for a stay. The State moved for leave to file an emergent interlocutory appeal, which was denied by the Appellate Division. The State then filed with this Court a motion for leave to appeal. We granted the motion and summarily remanded the matter to the Appellate Division for consideration on the merits. In addition, all further proceedings in the trial court were stayed.

On remand, a divided panel of the Appellate Division affirmed the denial of the motion to disqualify. *State in the Interest of S.G.*, 348 *N.J.Super.* 77, 98, 791 *A.*2d 285 (2002). The Appellate Division majority regarded the case as involving "successive" representation. *Id.* at 91, 791 *A.*2d 285. It concluded that due to Hilton's death the Sufrin firm did not represent Hilton and S.G. simultaneously, and that no actual conflict of interest existed. *Id.* at 95, 791 *A.*2d 285. The majority also concluded that the circumstances presented only a potential for a conflict, and not a serious one at that, because there was no evidence that the Sufrin firm had obtained from Hilton any confidential information relevant to S.G.'s representation. *Id.* at 96, 791 *A.*2d 285. Accordingly, the risk of a potential conflict was not found to outweigh S.G.'s right to counsel of his choice. *Ibid.*

The dissent would have disqualified the Sufrin firm on the basis that the representation would amount to a violation of RPC 1.7. *Id.* at 98, 791 *A.*2d 285 (Newman, J., dissenting). Judge Newman noted the inherent risk of conflict presented by an attorney's representation of a defendant accused of committing a crime against another client, specifically, the fact that the attorney might be required to cross-examine the victim/client. *Id.* at 99, 791 *A.*2d 285. In his view, the deceased client's inability to either grant or deny consent to the representation should not alter the prohibition on representation in such circumstances. *Ibid.* Indeed, Judge Newman characterized the representation in this case as a "disservice to the administration of criminal justice." *Ibid.*

We granted leave to appeal the interlocutory decision, 172 *N.J.* 172, 796 *A.*2d 890 (2002), and now reverse and remand for entry of an order disqualifying the Sufrin firm from representation of defendant.

## II.

"One of the most basic responsibilities incumbent on a lawyer is the duty of loyalty to his or her clients." *In re Opinion No. 653 of the Advisory Committee on Professional Ethics,* 132 *N.J.* 124, 129, 623 *A.*2d 241 (1993). The first version of the ABA Canons of Ethics, promulgated in 1908 and adopted that year in New Jersey, prohibited representation of a client when that undertaking would require an attorney to take a position adverse to another client's interests. Note, *Developments in the Law: Conflicts of Interest in the Legal Profession,* 94 *Harv. L.Rev.* 1244 (1981); *see also In re Kamp,* 40 *N.J.* 588, 595, 194 *A.*2d 236 (1963). Our Rules of Professional Conduct continue unabated that prohibition. A lawyer may not represent a client if the representation would be directly adverse to another client, RPC 1.7, and that conflict is imputed to all members of a law firm, disqualifying all if any one would be disqualified. RPC 1.10. The only exception to the rule's prohibition that might arise, subject to common law restrictions on disabling conflicts, is when an attorney: (1) reason-

ably believes that representation will not adversely affect the relationship with the other client; and (2) secures the consent of both clients, after full disclosure. RPC 1.7(a), (c)(1).

■ The attorney-client relationship is grounded in the fundamental understanding that an attorney will give "complete and undivided loyalty to the client" so that "... [t]he attorney should be able to advise the client in such a way as to protect the client's interests, utilizing his professional training, ability and judgment to the utmost." *In re Dolan*, 76 *N.J.* 1, 9, 384 *A*.2d 1076 (1978). RPC 1.7 is rooted in the concept that "[n]o man can serve two masters," Raymond L. Wise, *Legal Ethics* 272–73 (1970), and, it has been suggested that employment should be declined if there is a question whether the representation will create an adversity of interest between two clients. *Ibid.*

■ The judiciary bears the responsibility of "preserving the fiduciary responsibility that lawyers owe their clients." *Cohen v. Radio–Electronics Officers Union, Dist. 3, NMEBA*, 146 *N.J.* 140, 155, 679 *A*.2d 1188 (1996).

> There are very few of the business relations of life involving a higher trust and confidence than that of attorney and client, or, generally speaking, one more honorably or faithfully discharged; few more anxiously guarded by the law, or governed by sterner principles of morality and justice; and it is the duty of the court to administer them in a corresponding spirit, and to be watchful and industrious, to see that confidence thus reposed shall not be used to the detriment or prejudice of the rights of the party bestowing it.
>
> [*In re Loring*, 73 *N.J.* 282, 289–90, 374 *A*.2d 466 (1977) (quoting *Stockton v. Ford*, 52 *U.S.* (11 How.) 232, 247, 13 *L.Ed.* 676, 682–83 (1850)).]

In criminal matters, in which the trust between attorney and client has enhanced importance, special vigilance is required because an attorney's divided loyalty can undermine a defendant's Sixth Amendment right to effective assistance of counsel. *See, e.g., United States v. Moscony*, 927 *F*.2d 742, 748 (3d Cir.1991) (noting that defendant's right to effective assistance of counsel includes both adequate representation and right to attorney's conflict-free, undivided loyalty). The Sixth Amendment right to effective assistance of counsel, binding on the States by the

Fourteenth Amendment, *Johnson v. Zerbst*, 304 *U.S.* 458, 58 *S.Ct.* 1019, 82 *L.Ed.* 1461 (1938), requires a defense attorney's representation to be "untrammeled and unimpaired." *State v. Bellucci*, 81 *N.J.* 531, 538, 410 *A.*2d 666 (1980). Therefore, although a defendant must have a fair opportunity to have counsel of his own choosing, that right must yield when an actual conflict is found. *Moscony, supra,* 927 *F.*2d at 749–50.

Accordingly, in the criminal setting we have reinforced that it is incumbent on the courts to ensure that defendants receive conflict-free representation. *State v. Loyal,* 164 *N.J.* 418, 433, 753 *A.*2d 1073 (2000) (emphasizing trial court's responsibility for "assuring the fairness and reliability of the trial"). The federal courts similarly act to protect the integrity of their proceedings when a defendant's Sixth Amendment rights are placed at risk by an attorney's conflict of interest. *See, e.g., United States v. Dolan,* 570 *F.*2d 1177, 1184 (3d Cir.1978). As the Third Circuit Court of Appeals has explained,

> [t]he court should not be required to tolerate an inadequate representation of a defendant. Such representation not only constitutes a breach of professional ethics and invites disrespect for the integrity of the court, but it is also detrimental to the independent interest of the trial judge to be free from future attacks over the adequacy of the waiver or the fairness of the proceedings in his own court. . . .
>
> [*Ibid.*]

*See also Wheat v. United States,* 486 *U.S.* 153, 160, 108 *S.Ct.* 1692, 1698, 100 *L.Ed.*2d 140, 149 (1988) (observing independent nature of judiciary's interest in ensuring conflict-free representation, stating, "[f]ederal courts have an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them").

### III.

 Our starting point in this analysis is our disagreement with the conclusion of the courts below that the Sufrin firm's representation of Hilton ended on his death. Our rules do not support that view of the nature of the relationship between

counsel and a criminal defendant who dies in the midst of that representation. An attorney's responsibility, as attorney of record in a criminal proceeding, terminates upon expiration of the time in which to appeal from the final judgment or order. *R.* 1:11–3. Absent the client's consent, an attorney may not withdraw from a criminal matter without leave of court. The grant or denial of that motion is a matter of discretion with the trial court. *State v. Johnson,* 274 *N.J.Super.* 137, 643 *A.*2d 631 (App.Div.), *certif. denied,* 138 *N.J.* 265, 649 *A.*2d 1285 (1994).

Neither of those two possible events operated here to terminate the Sufrin firm's duty to continue to represent Hilton's interests in connection with the final disposition of the charges for which it was retained. Until the charges were dismissed by order of the court, typically on the prosecution's motion *nolle prosse* or *nolle prosequi* (literally "will no further prosecute"), the Sufrin firm, as counsel of record for Hilton's interests, remained obligated to answer to the court and to the prosecutor for Hilton. The firm owed a continuing duty of loyalty to him throughout the duration of that representation. In fact, the charges against Hilton remained pending for three weeks after his death, during which time the firm undertook the defense of his alleged killer. That rendered the representation of the two interests simultaneous.

Thus, this was not successive representation of clients with adverse interests where the possibility of breach of client confidences becomes a focus of the conflict analysis. Members of the Sufrin firm were serving simultaneously as counsel of record on behalf of the victim and on behalf of his alleged assailant within our court system for a period of weeks. That one of them died does not negate the actual conflict that arose and persisted during the entire period of the actual representation of the interests of both men. Here the Sufrin firm's dual representation of clients with patently adverse interests caused a conflict of interest that was direct and actual.

The adversity of the two interests simultaneously being represented is apparent on multiple levels. RPC 1.7 prohibits an

attorney's representation of a client when that representation will be directly adverse to another client. The proscribed representation need not be directly related to the representation currently underway on behalf of the first client. As stated in the Comment to Rule 1.7 of the Model Rules of Professional Conduct, on which our rule is modeled, "a lawyer ordinarily may not act as advocate against a person the lawyer represents in some other matter, even if it is wholly unrelated." Although the Sufrin firm's representation of Hilton at the time concerned the defense of a narcotics charge, its fiduciary responsibility to him and its obligation to avoid taking on representation of matters directly contrary to his interests, was not limited to parochial concerns adverse only to that specific charge. The firm must not take on any matter involving a direct conflict with Hilton's interests.

As the victim who died as a result of the shooting that occurred on August 1, 2001, Hilton plainly had a general interest in seeing his alleged attacker brought to justice. Had Hilton survived, he would have been an obvious choice as a witness in a later criminal trial against the perpetrator(s) of the attack that caused him injury, as the dissent noted below. Although Hilton cannot now testify, that does not mean that his interests were not adverse to those of S.G. during the two weeks of the firm's simultaneous representation.

The Sufrin firm's representation of S.G. is adverse on yet another level to its representation of Hilton. Upon entering his appearance on behalf of S.G., Steinberg became the attorney of record for the person accused of a crime that constituted also a patently tortious act against Hilton. Hilton died, after lingering several days, as a result of the assault allegedly visited on him by S.G., giving rise immediately to an incipient Survivor's Act action on his behalf. *N.J.S.A.* 2A:15-3. His interest in pursuing such an action (obviously later and through his estate acting on his behalf) is directly contrary to the firm's representation of his alleged shooter. The pointedly direct and adverse position inherent in

defending Hilton's accused killer is exactly the sort of conflict that the professional rules of conduct ought not and do not permit.

■ Finally, we note that this matter does not admit of the possibility of exemption from the proscription against representation of clients with adverse interests. Even if Hilton's consent, after death, somehow could be expressed effectively, S.G.'s waiver would not be dispositive. Given the actual conflict that existed in this case and the obligation to ensure that defendant receives a fair trial, S.G.'s proffered consent is immaterial because an actual and direct conflict may not be waived in this setting. RPC 1.7(c)(1); *Loyal, supra,* 164 *N.J.* at 433, 753 *A.2d* 1073. In *Loyal,* we noted the United States Supreme Court's recognition of the "apparent willingness of Courts of Appeals to entertain ineffective-assistance claims from defendants who have specifically waived the right to conflict-free counsel." *Id.* at 434, 753 *A.2d* 1073 (citing *Wheat, supra,* 486 *U.S.* at 164, 108 *S.Ct.* at 1698–99, 100 *L.Ed.2d* at 149–51). Although S.G. did have a long-term relationship with the Sufrin firm, the presumption of counsel of one's choice is overcome where, as here, the counsel chosen by defendant is disqualified by an actual conflict of interest.

## IV.

The judgment of the Appellate Division is reversed and the matter remanded for entry of an order disqualifying the Sufrin firm. Our stay of further proceedings is dissolved, subject to the issuance of the disqualification order we have directed.

*For reversal and remandment*—Chief Justice PORITZ and Justices COLEMAN, LONG, VERNIERO, LaVECCHIA, ZAZZALI and ALBIN—7.

*Opposed*—None.