264 N.J. Super. 213 (1993)
624 A.2d 102
GREATE BAY HOTEL & CASINO, INC. T/A SANDS HOTEL & CASINO, PLAINTIFF,
v.
THE CITY OF ATLANTIC CITY AND INTERVENORS SQUARE BRIGHTON CORP., INC., BOARDWALK REGENCY CORPORATION (CAESAR'S) AND CYNWYD INVESTMENTS, DEFENDANTS.
Superior Court of New Jersey, Law Division Atlantic County.
Decided April 5, 1993.
Stephen R. Nehmad for plaintiff (Perskie & Nehmad, attorneys).
Edward N. Fitzpatrick for defendant Square Brighton Corp., Inc. (Clapp & Eisenberg, attorneys; Agnes Rymer, on the brief).
*214 Paul J. Gallagher for defendant City of Atlantic City.
Lloyd Levenson for defendant Boardwalk Regency Corp. (Caesar's) (Cooper Perskie April Niedelman Wagenheim & Levenson, attorneys).
John Rosenberger for defendant Cynwyd Investments (Perillo & Rosenberger, attorneys).

OPINION
WILLIAMS, A.J.S.C.
This matter comes before the court on motions of Greate Bay Hotel & Casino, Inc. t/a Sands Hotel & Casino and Boardwalk Regency Corporation. Pursuant to R.P.C. 1.7, movants seek disqualification of the law firm of Clapp & Eisenberg, P.C. as counsel for Square Brighton Corporation, Inc. in this action.
This case was initiated by plaintiff Sands seeking, among other things, an order requiring the City of Atlantic City to take the necessary action to acquire the southerly 15 feet of Pop Lloyd Boulevard and keep it in the public domain for vehicular and pedestrian access. Based upon its leasehold interest in the property in question, an order was entered by this court permitting intervention by Square Brighton. At the time of the motion for intervention, Square Brighton was represented by the law firm of Gruccio, Pepper, Giovinazzi, DeSanto and Farnoly. Thereafter, Clapp & Eisenberg, P.C. was substituted as attorneys for Square Brighton.
Prior to the institution of this suit, and continuing to the present time, the firm of Clapp & Eisenberg has been retained as counsel by the trustees of five separate trusts which have been established cooperatively by various casinos in the City of Atlantic City. The trusts were established for the purposes of operation of a computerized link of progressive slot machines and management of the twenty year payout of the progressive jackpots related thereto. They are known as The Atlantic City Megabucks Trust, The Atlantic City Quartermania Trust, The Atlantic City Fabulous *215 Fifties Trust, The Atlantic City Star Pokermania Trust, and The Atlantic City High Rollers Trust. Membership in the trusts varies from seven to eleven casinos respectively, with Boardwalk Regency involved in each trust and Sands involved in three. In addition to being settlors of said trusts, the casinos also serve as co-trustees. Each casino is represented in its capacity as trustee by a designated person appointed by that casino. The business of the trusts is carried on by the trustees through votes of the trustees' representatives at quarterly meetings, through the services of professionals retained by the trustees, through contracted services from IGT, Inc. and through employees of Showboat Hotel and Casino whose wages and related expenses are paid by the trusts.
Sands and Boardwalk Regency seek disqualification of Clapp & Eisenberg in this suit based upon R.P.C. 1.7 which provides:
(a) a lawyer shall not represent a client if the representation of that client will be directly adverse to another client unless: (1) the lawyer reasonably believes that representation will not adversely affect the relationship with the other client; and (2) each client consents after a full disclosure of the circumstances and consultation with the client, except that a public entity cannot consent to any such representation.
Movants assert that Clapp & Eisenberg represents them in their capacity as members and co-trustees of the various trusts and that by representing Square Brighton herein that firm is engaging in representation of a client directly adverse to their interests. They further assert that there has been no consultation with them by Clapp & Eisenberg concerning the representation of Square Brighton and no consent given by them to such representation.[1]
Clapp & Eisenberg acknowledges that it has not obtained consent from Sands and Boardwalk Regency to represent Square Brighton herein. It asserts, however, that there is no adverse *216 client relationship involved because its representation with respect to the trusts is covered by R.P.C. 1.13 which provides:
(a) A lawyer employed or retained to represent an organization represents the organization as distinct from its directors, officers, employees, members, shareholders or other constituents.
Clapp & Eisenberg asserts that each trust is an independent entity, separate and distinct from its members and that it represents each trust as an entity and not its members. On this basis it claims that no representation adverse to any client exists in this case.
The New Jersey Rules of Professional Conduct are based upon The American Bar Association Model Rules of Professional Conduct. See Report of the New Jersey Supreme Court Committee on the Model Rules of Professional Conduct (112 N.J.L.J. supplement). The commentary to R. 1.13 of the ABA Model Rules indicates that an organizational client, as that term is used in the rule, must have a status as a legal entity. It provides:
An organizational client is a legal entity, but it cannot act except through its officers, directors, employees, shareholders and other constituents.
The entity need not be a corporation, however. The commentary makes it clear that the rule is equally applicable to unincorporated associations. In that regard it expressly provides:
The duties defined in this Comment apply equally to unincorporated associations. "Other constituents" as used in this Comment means the positions equivalent to officers, directors, employees and shareholders held by persons acting for organizational clients that are not corporations.
At common law, unincorporated associations were not regarded as legal entities. Such associations had no status distinct from the persons composing them. 6 Am.Jur.2d, Associations and Clubs § 1. However, that view has been modified over time by case law and legislative action. Today, unincorporated associations have been accorded legal status for a number of purposes, perhaps the most significant of which is the power to sue and be sued. Our Legislature has explicitly dealt with the legal status of unincorporated organizations with respect to such powers. N.J.S.A. 2A:64-1 provides:

*217 Any unincorporated organization or association, consisting of 7 or more persons and having a recognized name, may sue or be sued in any court of this state by such name in any civil action affecting its common property, rights and liabilities, with the same force and effect as regards such common property, rights and liabilities as if the action were prosecuted by or against all the members thereof. Such an action shall not abate by reason of the death, resignation, removal or legal incapacity of any officer of the organization or association or by reason of any change in its membership.
While the court has found no New Jersey case explicitly dealing with trusts such as those involved herein, a legal status for suit purposes has been recognized in New Jersey for the following types of unincorporated organizations: labor unions, Donnelly v. United Fruit Co., 40 N.J. 61, 190 A.2d 825 (1963), International Allied Printing Trades Ass'n. v. Master Printers Union of New Jersey, 34 F. Supp. 178 (D.N.J. 1940); joint stock associations, Saunders v. Adams Exp. Co., 71 N.J.L. 270, 57 A. 899, aff'd, 71 N.J.L. 520, 58 A. 1101 (1904), Edgeworth v. Wood, 58 N.J.L. 463, 33 A. 940 (1896); tenants associations, Crescent Park Tenants Ass'n. v. Realty Equities Corp. of New York, 58 N.J. 98, 275 A.2d 433 (1971); hospital medical staffs, Corleto v. Shore Memorial Hospital, 138 N.J. Super. 302, 350 A.2d 534 (Law Div. 1975); associations of travel agents, Travel Agents Malpractice Action Corps. v. Regal Cultural Soc., Inc., 118 N.J. Super. 184, 287 A.2d 4 (App.Div. 1972); and masonic lodge associations, Buteas v. Raritan Lodge No. 61, 248 N.J. Super. 351, 591 A.2d 623 (App.Div. 1991). The statute permitting such suits is remedial legislation and is to be given as liberal an interpretation as possible consistent with its language. Donnelly v. United Fruit Co., supra, 40 N.J. at 72, 190 A.2d 825; Corleto v. Shore Memorial Hospital, supra, 138 N.J. Super. at 312, 350 A.2d 534.
Counsel for the Sands asserts that the trusts involved here are business trusts organized for the purpose of conducting the business of administering the operation of the Atlantic City Quartermania Progressive slot machine system. A business trust has been defined as an unincorporated business organization created by an instrument by which property is to be held and managed by trustees for the benefit and profit of persons holding transferable *218 certificates evidencing beneficial interests in the trust estate. 13 Am.Jur.2d Business Trusts § 1, Hecht v. Malley, 265 U.S. 144, 44 S.Ct. 462, 68 L.Ed. 949 (1924). The concept, also known as a Massachusetts Trust, originated as an alternative to the corporate form of organization for the purpose of conducting a business. Goldwater v. Oltman, 210 Cal. 408, 292 P. 624 (1930). A business trust is not a trust in the ordinary sense of holding and conserving property but rather is a device for the conduct of a business. Morrissey v. Commissioner of Internal Revenue, 296 U.S. 344, 56 S.Ct. 289, 80 L.Ed. 263 (1935). For this reason, business trusts are excluded from the scope of the Restatement of the Law of Trusts. Restatement (Second) of Trusts § 1 (1959). The commentary to section one provides:
A statement of the rules of law relating to the employment of a trust as a device for carrying on business is not within the scope of the Restatement of this Subject. Although many of the rules applicable to trusts are applied to business trusts, yet many of the rules are not applied, and there are other rules which are applicable only to business trusts. The business trust is a special kind of business association and can best be dealt with in connection with other business associations.
The trusts in this case substantially fit the description of business trusts except for the fact that there are no transferable certificates evidencing beneficial interests herein. However, these trusts do provide for the addition and withdrawal of members as well as assignment of rights from one member to another.
Although there is some split of authority, other jurisdictions have generally treated business trusts as distinct legal entities for purposes of suit. Vischer v. Dow Jones & Co., 325 Ill. App. 104, 59 N.E.2d 884 (1945); Lafayette Bank & Trust Co. v. Branchini & Sons Constr. Co., 32 Conn. Supp. 124, 342 A.2d 916 (1975); In re Vento Development Corp., 560 F.2d 2 (1st Cir.1977); National City Finance Co. v. Lewis, 3 P.2d 316 (Cal. App. 1931), reh'g denied 4 P.2d 163 (Cal. App. 1931), superseded, 216 Cal. 254, 14 P.2d 298 (1932); Beilin v. Krenn & Dato, 350 Ill. 284, 183 N.E. 330 (1932); Hemphill v. Orloff, 238 Mich. 508, 213 N.W. 867 (1927), aff'd, 277 U.S. 537, 48 S.Ct. 577, 72 L.Ed. 978 (1928); Brown v. Bedell, 263 N.Y. 177, 188 N.E. 641 (1934), reh'g denied, 264 N.Y. 453, 191 N.E. 510, motion denied, 264 N.Y. 513, 191 N.E. 541 (1934).
*219 In assessing the character of the trusts herein it is undisputed that each of these trusts have been organized and are administered by seven or more casinos and each has a recognized name. Additionally, based upon the uncontradicted affidavit of John M. Donnelly, the trusts petition and appear before the New Jersey Casino Control Commission in their own names, file income tax returns in their own names and sue in their own names. Furthermore, each of the trusts is organized to continue business operations even though new members may be added or current members may withdraw. The court is persuaded, therefore, that the trusts herein are of such a character as to warrant the status of unincorporated associations with the right to sue and be sued in their own name.
Movants assert however, that an attorney representing an unincorporated association represents each individual member as a client. In support of this proposition they cite: Westinghouse Elec. Corp. v. Kerr-McGee Corp., 580 F.2d 1311 (7th Cir.), cert. denied, 439 U.S. 955, 99 S.Ct. 353, 58 L.Ed.2d 346 (1978); Halverson v. Convenient Food Mart, Inc., 458 F.2d 927 (7th Cir.1972); Philadelphia Housing Authority v. American Radiator & Standard Sanitary Corp., 294 F. Supp. 1148 (E.D.Pa. 1969); and United States of America v. American Radiator & Standard Sanitary Corp., 278 F. Supp. 608 (W.D.Pa. 1967). In reviewing the circumstances of each of these cases it is apparent that they do not support the proposition urged by the movants. In Westinghouse the court expressly stated:
We need not make any generalized pronouncements of whether an attorney for such an organization represents every member because this case can and should be decided on a much more narrow ground.

[Westinghouse, supra at 1319.]
Both of the American Radiator cases arose in the context of an assertion of attorney client privilege. In those cases, members of an unincorporated trade association sought to prevent disclosure of communications with the attorney retained by the association. In that context, the court held that the privilege would be applicable. *220 However, it must be noted that a similar result would have occurred even if the parties had been officers of a corporate entity and the attorney had been retained to represent the corporate entity. See Sicpa North America v. Donaldson Enterprises, Inc., 179 N.J. Super. 56, 60, 430 A.2d 262 (Law Div. 1981); Stewart Equipment Co. v. Gallo, 32 N.J. Super. 15, 17, 107 A.2d 527 (Law Div. 1954); Upjohn Company v. United States, 449 U.S. 383, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981).
In Halverson the attorney who represented an unincorporated association of franchisees communicated with its individual members soliciting potential members for a class action suit. Defendants sought dismissal of the action arguing that the association alone was the client and that communication with its individual members was ethically forbidden. The court stated that the attorney could "reasonably believe" that the franchisees were his clients and that even if they could not reasonably be considered as clients, the communication was nevertheless not improper. The case did not expressly deal with the issue of whether an attorney for an unincorporated association actually represents each individual member as a client.
Furthermore, all of these cases were decided prior to the adoption of the ABA Model Rules in 1983. As previously noted, the commentary to the rule makes clear the intent to include unincorporated associations within the parameters of R.P.C. 1.13.
Among the reasons for making the distinction between an organization and its members is the fact that at times the interests of the organization may conflict with those of individual members. The commentary to R.P.C. 1.13 of the ABA Model Rules observes:
There are times when the organization's interests may be or become adverse to those of one or more of its constituents. In such circumstances the lawyer should advise any constituent, whose interest the lawyer finds adverse to that of the organization of the conflict or potential conflict of interest, that the lawyer cannot represent such constituent, and that such person may wish to obtain independent representation. Care must be taken to assure that the individual understands that, when there is such adversity of interest, the lawyer for the organization cannot provide legal representation for that constituent individual, and that discussions between the lawyer for the organization and the individual may not be privileged.
*221 In reviewing the trust instruments herein, there are numerous areas of potential conflict which could arise between the trusts and their individual members. Under the trust instruments the individual members have specific obligations to the trust: Trust members are required to make periodic payments to the trust based upon slot machine handle and are further obligated to make payments as determined by the trustees for slot machine rental and any trust fund shortfalls. Furthermore, trust members are required to reimburse the trust for lease, license and tax payments made by the trust to the extent of each member's "Performance Criteria Shortfall." The trustees are required to take "all necessary action to collect ... funds required to be paid to the Trust." Toward this end the trustees are empowered to "arbitrate, defend, prosecute, enforce, release, institute action with respect to or settle any claim of or against the Trust, according to law." In addition, if chosen by the trust, a member must make space available to the trust at a fair market rental. Finally, the trustees may require a member to withdraw upon the occurrence of certain specified activities.
A failure of a member to honor any of these obligations, or a claim to that effect, would place the trust in an adversarial position with that member. In pursuing its rights in such circumstances it is reasonable to expect that the trust would be represented by its retained counsel and not be required to seek new counsel unfamiliar with its operations. It is precisely this situation which was contemplated by the commentary to R.P.C. 1.13.
The court is satisfied, therefore, that these trusts are "organizations" as that term is used in R.P.C. 1.13. Since Clapp & Eisenberg represents the trusts as organizations and not the trust members individually, it does not represent trust members Boardwalk Regency and Sands. There is, therefore, no conflict pursuant to R.P.C. 1.7. The motions to disqualify Clapp & Eisenberg as counsel for Square Brighton, herein, are denied.
NOTES
[1] It should be noted that R.P.C. 1.6 is not implicated in this motion. There is no claim that Clapp & Eisenberg have obtained any information relevant to this suit as a result of their representation of the trusts.