Sullivan
No. 99-294

## PETER FRANKLIN

v.

## DENISE CALLUM, PROJECT DIRECTOR, NH/VT SOLID WASTE PROJECT

Argued: May 14, 2002
Opinion Issued: August 14, 2002

*Peter Franklin*, by brief and orally, *pro se.*

*Bianco Professional Association*, of Concord (*Jeffrey A. Meyers* on the brief and orally), for the respondent.

DUGGAN, J. The petitioner, Peter Franklin, appeals an order of the Superior Court (*Morrill*, J.) denying his petition seeking access to bills incurred for legal work performed on behalf of the NH/VT Solid Waste Project (Project). We vacate and remand.

The Project is the joint undertaking of two regional refuse disposal districts, one in New Hampshire and one in Vermont, and is governed by an agreement entered into by the two districts pursuant to the Interstate Solid Waste Compact. RSA ch. 53-D (1991); Vt. Stat. Ann. Tit. 10, ch. 46 (1998). The respondent, Denise Callum, is the director of the Project. The

petitioner serves as a representative to the New Hampshire District and as a member of the Project's Joint Meeting.

The Project's New Hampshire District is also known as the Sullivan County Regional Refuse Disposal District and was created by fifteen municipalities. Under the statute enabling municipalities to create regional refuse disposal districts, the New Hampshire District is recognized as "a body politic and corporate," RSA 53-B:7 (1991) (amended 1994, 1996), and accordingly has the powers of, and operates like, a municipality. Upon forming the New Hampshire District, the participating municipalities agreed that "[t]he powers, duties and liabilities of this regional refuse disposal district shall be vested in and exercised by a Regional District Committee." *See also* RSA 53-B:8 (1991) (amended 1994).

The Town of Newport, one of the municipalities in the New Hampshire District, appointed the petitioner as one of its two representatives to the district committee. In all, the district committee is made up of seventeen representatives, appointed from the fifteen municipalities for three-year terms. At its annual meeting, the district committee elects from the seventeen representatives a chair and vice chair, each of whom holds office for one year. The petitioner does not serve as the chair or vice chair. The Vermont District is similarly constituted pursuant to Vermont law. *See* Vt. Stat. Ann. Tit. 24, ch. 121 (1992 & Supp. 2001).

When the New Hampshire District and the Vermont District entered into the agreement for the Project, the Interstate Solid Waste Compact required the agreement to include a "[p]rovision for a joint board and/or administrator, responsible for administering the cooperative undertaking and the powers to be exercised thereby." RSA 53-D:1, art. II, E (1991). Under the agreement for the Project, "[a]ll cooperative action necessary to carry out the purposes of [the] Agreement shall be authorized by a vote of the Joint Meeting and implemented by the Executive Committee in accordance with such vote." The seventeen representatives of the New Hampshire District and their counterparts from the Vermont District make up the joint meeting. The executive committee consists of the chair and vice chair from each district committee, and three members elected annually by each district committee. The petitioner does not serve on the executive committee.

In 1998, the petitioner requested that the Project director provide him with copies of all bills for legal services performed that year for the Project. In response to his request, the director and executive committee produced copies of the bills for legal services with details regarding the nature of the work, the attorney who performed the work, as well as the time, the date and the charge for the legal work. Material that the director and executive committee believed was protected by the attorney-client

privilege, however, was redacted. After reviewing the legal bills, the trial court ruled that "only confidential material was redacted," and the petitioner was not entitled to review that material because he was not the "client." Instead, the trial court found that "the Project is a separate legal entity entitled to legal representation," and therefore the Project is the "client" for purposes of determining attorney-client privilege. The trial court accordingly concluded that the Project, through the executive committee and the joint meeting, have the "final say" to "determine how and under what circumstances" to offer the petitioner access to the legal bills.

On appeal, the petitioner argues that the superior court erred when it concluded that he was not a client of the attorneys providing legal services to the Project. He contends that as a member of the governing body for the New Hampshire District, one of the entities that entered into the Project's agreement, he is a client of the attorneys performing work for the entities under the Project, and therefore he is entitled to unfettered access to the legal bills incurred on behalf of the entities under the Project.

To determine whether the petitioner is a client of the attorneys who provide services to the Project, we must first examine the nature of the Project. The Project was established when two governmental units, the New Hampshire District and the Vermont District, entered into an agreement "to develop a resource recovery facility, a sanitary landfill, and those related services needed for the efficient operation thereof, to serve the towns and cities which are members of the [New Hampshire] District and the [Vermont] District." *See* RSA 53-D:1, art. II(A). The Interstate Solid Waste Compact authorizes the districts to enter into a cooperative agreement, but does not authorize the districts to establish a separate legal entity. *Compare* RSA 53-D:1, art. II *with* RSA 53-B:7 *and* RSA 195:6 (1999). To govern the districts' cooperative undertakings, the statute requires the agreement to "[p]rovi[de] for an administrator or a joint board responsible for administering the joint or cooperative undertaking." RSA 53-A:3, III(a) (1991) (amended 1993, 1994). When two or more entities enter into a cooperative agreement that does not establish a separate legal entity, the organization of the entities under the agreement becomes an unincorporated association. *See* G. WEBSTER, THE LAW OF ASSOCIATIONS § 2.04 (2000) (defining unincorporated association as group acting together for common purpose without corporate charter, but pursuant to agreement and rules governing organization); *Shortlidge v. Gutoski*, 125 N.H. 510, 513-14 (1984). Thus, we must determine who the client is when the Project, as an unincorporated association, retains an attorney.

The respondent argues that the Project possesses sufficient independent status to be recognized as the client and, therefore, an attorney retained to represent the Project, represents the Project as distinct from its members. The respondent further argues that in view of the Project's independent status, only the joint meeting or the executive committee can act for the Project to execute the attorney-client relationship.

Generally, an attorney "retained to represent an organization represents the organization as distinct from its directors, officers, employees, members, shareholders or other constituents." N.H. R. PROF. CONDUCT 1.13(a); *see also McCabe v. Arcidy*, 138 N.H. 20, 26 (1993) (attorney's representation of corporation did not create attorney-client relationship with shareholder of corporation). When an unincorporated association has operations, employees and continuing existence separate from its members, it is recognized "as an organization capable of being represented separately from its members." *City of Kalamazoo v. Michigan Disposal Serv. Corp.*, 125 F. Supp. 2d 219, 236 (W.D. Mich. 2000) (quotation omitted); *see* N.H. R. PROF. CONDUCT 1.13 ABA model code comment on unincorporated associations (explaining that duty that applies to "organizations" also applies to unincorporated associations); *see also Greate Bay Hotel v. Atlantic City*, 624 A.2d 102, 106-07 (N.J. Super. Ct. App. Div. 1993).

On the other hand, when an unincorporated association has no legal status independent of its members, has operations related directly to the interests of the membership, and has members actively involved in its operation and management, it more closely resembles a partnership. *See City of Kalamazoo*, 125 F. Supp. 2d at 236-37. "Such [unincorporated associations] are, at best, joint ventures, and have no real existence or interests apart from the members." *Id.* at 237.

In this case, the Project has no independent legal status separate from the districts. The Project's operations relate directly to the New Hampshire District's purpose "to plan, construct, and equip a refuse disposal facility for the benefit of [the participating] cities and towns." RSA 53-B:7, III. Finally, the districts are actively involved in the operation and management of the Project. The joint meeting, which is comprised entirely of representatives from each district, authorizes "[a]ll cooperative action necessary to carry out the purposes of [the Project] agreement." Cooperative action authorized by the joint meeting is then implemented by the executive committee, which is comprised of the chair and vice chair from each district, as well as other representatives elected from each

district. Thus, the Project resembles a joint venture, which has no real existence or interests apart from its members, the districts.

 An attorney who represents members' joint interests in an unincorporated association represents each individual member of the association as to matters of association business. *Cf. United States v. American Radiator & Standard San. Corp.*, 278 F. Supp. 608, 614 (W.D. Pa. 1967) (holding each individual member of unincorporated association made up of eight members is a client of association's lawyer). In this case, each of the Project's individual members, the New Hampshire District and the Vermont District, and their joint venture, the Project, are each considered to be the "client" relative to confidential communications protected by the attorney-client privilege. 1 P. RICE, ATTORNEY-CLIENT PRIVILEGE IN THE UNITED STATES § 4.48, at 263 (2d ed. 1999). Because each district, individually and jointly as the Project, is considered to be the client, each district, individually and jointly as the Project, may have access to the Project's legal bills. Thus, the trial court erred when it concluded that only the Project, through the executive committee and the joint meeting, may "determine how and under what circumstances" to offer the petitioner access to the legal bills. Consequently, we vacate and remand for further proceedings consistent with this opinion.

*Vacated and remanded.*

NADEAU and DALIANIS, JJ., concurred.