894 A.2d 681 (2006)
384 N.J. Super. 216
J.G. RIES & SONS, INC., Plaintiff-Appellant,
v.
SPECTRASERV, INC., Sanitary Waste Carrier, Inc., A & S Transportation Company, Modern Transportation Company, Xtra Lease, Inc., Xtra Corporation, Defendants-Respondents,
Linden Roselle Sewerage Authority and Crum & Forester Insurance Company, Defendants.
Spectraserv, Inc., Third-Party Plaintiff-Respondent,
v.
Frank E. Kearney, Frank E. Kearney & Company, and Robert J. Chitren, Third-Party Defendants-Appellants.
Superior Court of New Jersey, Appellate Division.
Argued December 7, 2005.
Decided March 29, 2006.
*682 Brian E. Fleisig, Hackensack, argued the cause for plaintiff-appellant/third-party defendants-appellants (Pearce Fleisig, attorneys; Mr. Fleisig, of counsel and on the *683 brief; Christopher O. Eriksen, on the brief).
Adam K. Derman, West Orange, argued the cause for defendant-respondent/third-party plaintiff-respondent Spectraserv, Inc. and defendants-respondents Sanitary Waste Carrier, Inc., A & S Transportation Company and Modern Transportation Company (Wolff & Samson, attorneys; Mr. Derman, of counsel and on the brief; Joseph Tripodi, on the brief).
No briefs were filed on behalf of respondents Xtra Lease, Inc. and Xtra Corporation.
Before Judges WEFING, WECKER and GRAVES.
The opinion of the court was delivered by
WEFING, P.J.A.D.
Plaintiff J.G. Ries & Sons, Inc. ("Ries") appeals, pursuant to leave granted, from a trial court order disqualifying the firm of Pearce Fleisig, LLC ("Pearce") from representing it in this matter. After reviewing the record in light of the contentions advanced on appeal, we reverse.
Ries owns property located at 65 Jacobus Avenue in Kearny. Defendant Spectraserv has its principal place of business on property owned by defendant Modern Transportation Company and located at 75 Jacobus Avenue. Spectraserv is in the business of receiving sewage sludge, processing it and then disposing of the resulting sludge cake. In June 2004, represented by Pearce, Ries filed suit against Spectraserv, Modern and certain of their related companies, seeking damages for the noxious odors and fumes Ries alleged were generated by Spectraserv in the course of its business operations and which Ries contended affected the use of its own property.[1] This lawsuit was apparently spurred, at least in part, by a tenant having vacated the property, citing those noxious odors and fumes as justification for terminating its lease. Ries joined that tenant, Xtra Lease, Inc., as a defendant in the Spectraserv litigation.
The area in question is in the portion of Kearny referred to generally as South Kearny. Trucking companies are one of the principal businesses in the area, some using their sites to maintain and operate freight terminals, some to park and store trailers. Approximately fifty of the businesses located in South Kearny banded together several years prior to the incidents giving rise to this appeal to form Lincoln North Development Corporation to advance and promote the business interests of its members and the area. Both Ries and Spectraserv are members of Lincoln North. The record before us does not include the date of Lincoln North's formation or its certificate of incorporation or bylaws.
Prior to November 2004, the South Kearny area was identified in Kearny's zoning ordinance as the South Kearny Manufacturing ("SKM") zone. In November 2004, Kearny amended its zoning ordinance and divided what had been the SKM zone into SKM-N and SKM-S zones. This amended ordinance included certain restrictions on the maintenance and operation of trucking terminals and the storage of trailers that had not been in the prior ordinance, and in December 2004, Lincoln North filed a prerogative writ action, challenging this zoning ordinance on behalf of its members. The Pearce firm, counsel to Ries in its suit against Spectraserv, represented *684 Lincoln North in its challenge to the Kearny zoning ordinance.
In April 2005, Spectraserv filed a motion to bar Pearce from continuing as the attorney for Ries in its suit against Spectraserv. This appeal follows upon the trial court granting Spectraserv's motion.
On appeal, Ries contends that no conflict of interest exists between the Pearce firm representing it in its suit against Spectraserv, as well as representing Lincoln North in the challenge to the Kearny zoning ordinance. It asserts the authorities cited by the trial court do not support the extraordinary relief granted. Spectraserv, on the other hand, responds that a conflict of interest exists that requires the disqualification of the Pearce firm under RPC 1.7, that the firm should be disqualified because of its "aggressive litigation tactics" and that the firm should be disqualified because attorneys from the Pearce firm will be witnesses.
Before proceeding to an analysis of the issues on appeal, we note the standard governing our review of the trial court's order. Ries contends that our review is de novo and plenary, while Spectraserv frames its argument in terms of whether the trial court abused its discretion in granting the motion.
We are satisfied that Ries is correct in this regard. We view the matter as fundamentally a question of law and perceive no basis to distinguish our review in this appeal from that in any other appeal involving issues of law. Manalapan Realty, L.P. v. Twp. Comm. of the Twp. of Manalapan, 140 N.J. 366, 378, 658 A.2d 1230 (1995); State v. Bruno, 323 N.J.Super. 322, 331-32, 732 A.2d 1136 (App.Div. 1999) (noting that its review of a trial court order denying the State's motion to disqualify defendant's attorney was plenary, there being no dispute of fact). We agree with the analysis and approach adopted by the Third Circuit in United States v. Miller, 624 F.2d 1198 (3d Cir.1980), in which the court considered the question of whether a conflict of interest existed to be a question of law. It noted that the issue of whether certain conduct violated a disciplinary rule was "a question of law, subject to plenary review." Id. at 1201.

I
We turn first to the effect, if any, of Pearce representing Lincoln North, of which both Ries and Spectraserv are members, upon its ability to represent Ries in its suit against Spectraserv. The trial court, in its oral opinion, referred to two of the Rules of Professional Conduct ("RPCs"), RPC 1.7 and 1.13.
RPC 1.7(a) provides:
Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:
(1) the representation of one client will be directly adverse to another client; or
(2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client, or a third person or by a personal interest of the lawyer.
RPC 1.13 provides in relevant part:
(a) A lawyer employed or retained to represent an organization represents the organization as distinct from its directors, officers, employees, members, shareholders or other constituents.
. . .
(e) A lawyer representing an organization may also represent any of *685 its directors, officers, employees, members, shareholders or other constituents, subject to the provisions of RPC 1.7.
The trial court concluded in its oral opinion that the Pearce firm was disqualified under RPC 1.7[2] and that RPC 1.13 did not apply.
RPC 1.7 reflects "the fundamental understanding that an attorney will give `complete and undivided loyalty to the client' [and] `should be able to advise the client in such a way as to protect the client's interests, utilizing his professional training, ability and judgment to the utmost.'" In re S.G., 175 N.J. 132, 139, 814 A.2d 612 (2003) (quoting In re Dolan, 76 N.J. 1, 9, 384 A.2d 1076 (1978)).
Whether the Pearce firm is, indeed, disqualified under RPC 1.7(a) depends, in part, upon whether Spectraserv should be deemed a Pearce client in light of its membership in Lincoln North. The parties have not pointed us to, and our own research has not disclosed, reported authority in New Jersey dealing with the question of whether a member of a trade association should be deemed a client of the lawyer who represents that trade association. There is little authority elsewhere, as well. The trial court in its oral opinion relied on two authorities that the parties discuss extensively in their briefs. A detailed analysis of each is thus appropriate.

A
Both parties find support for their respective positions in Glueck v. Jonathan Logan, Inc., 653 F.2d 746 (2d Cir.1981). The plaintiff in that case, a former executive with the defendant, sued for breach of employment contract. Id. at 748. He was represented in that suit by the firm of Phillips, Nizer, Benjamin, Krim & Ballon. Ibid. Logan moved to disqualify the firm because it also represented a trade association, Apparel Manufacturers Association, Inc., of which R & K Originals, one of Logan's divisions, was a member. Ibid. The sole purpose of the Association was to negotiate collective bargaining agreements for its members with the International Ladies Garment Workers' Union. Ibid. The president of R & K was a vice-president of the Association and had occasion to meet with Phillips, Nizer to discuss labor matters. Ibid. The District Court concluded that Phillips, Nizer's representation of the Association precluded it from representing Glueck in his suit against Logan, and the Court of Appeals affirmed. Ibid. The Court of Appeals formulated the following principle:
Disqualification will ordinarily be required whenever the subject matter of a suit is sufficiently related to the scope of the matters on which a firm represents an association as to create a realistic risk either that the plaintiff will not be represented with vigor or that unfair advantage will be taken of the defendant. Moreover, once that risk appears, it is appropriate to assess the risk that prosecution of a plaintiff's lawsuit by an association's law firm will inhibit the free flow of information from the defendant to the firm that is necessary for the firm's proper representation of the association.
[Id. at 750.]
The court stressed that in the course of representing the Association in labor negotiations, the firm could have learned *686 whether Logan had cause to terminate Glueck. Ibid. It also noted that the firm could have become privy to Logan's termination policies or practices that might bear upon the merits of Glueck's suit. Ibid. Thus, the court found the presence of a "substantial relationship" between the firm representing the Association and representing Glueck against an Association member and granted Logan's motion to disqualify the firm. Id. at 749-50. The trial court, in its brief oral opinion, referred to the test enunciated in Glueck. It also noted its conclusion that the two lawsuits were sufficiently related to require that the Pearce firm be disqualified.
Having reviewed the record in this matter, we are unable to perceive a "substantial relationship" between Ries's lawsuit against Spectraserv and Lincoln North's prerogative writ action against the municipality of Kearny. The only real connection between the two is that they involve property located in South Kearny. The two suits have completely separate subject matter and litigation goals. The Lincoln North action is a challenge to Kearny's revision of its zoning ordinance; its object is to permit trucking companies to continue operating their businesses in the same manner they had been permitted to under the prior ordinance. The Ries suit is entirely unrelated to the maintenance of a trucking business; it is premised upon Ries's allegation that Spectraserv's business generates noxious fumes and odors that carry onto the Ries property. We are satisfied that the principles enunciated in Glueck do not warrant disqualifying the Pearce firm for the Spectraserv litigation.

B
The trial court also cited, as additional support, Formal Opinion of the Committee on Ethics and Professional Responsibility of the American Bar Association, Formal Op. 92-365 (1992). The question posed to the Committee was whether "a law firm representing a trade association may also represent a client litigating against an individual member of that association." Ibid. The Committee reached no direct conclusion to the question but rather set forth an analytical framework to consider the matter in the context of the then-governing Model Rules of Professional Responsibility. The Committee noted that the proper method of analysis would, in large measure, depend upon whether the individual member of the trade association could be considered a client of the attorney. Ibid. The Committee set forth the prerequisites to permit an attorney representing a trade association to sue a member of that association if the member could be considered a client of the attorney. Ibid. Those prerequisites, in essence, track the provisions of RCP 1.7(b) and include informed consent. Clearly, if Spectraserv can be considered a client of the Pearce firm as a result of its membership in Lincoln North, the firm would be precluded under RPC 1.7(b) from handling the Ries litigation because Spectraserv does not consent.
The Committee distinguished between what it referred to as a member of the trade association being considered a "direct" client of the attorney representing the association and the member being considered a "derivative" or "vicarious" client. The Committee noted that the formation of an attorney-client relationship is not dependent upon the parties having specifically agreed to the creation of such a relationship and pointed to Westinghouse Elec. Corp. v. Kerr-McGee Corp., 580 F.2d 1311 (7th Cir.1978).
In that case, the firm of Kirkland and Ellis was retained by the American Petroleum Institute to oppose certain legislation *687 which Congress was considering which would require the divestiture of certain businesses by Institute members. Westinghouse, supra, 580 F.2d at 1312-13. As part of that representation, the firm solicited information from various Institute members, including Kerr-McGee, as to the potential impact of the proposed legislation. The firm noted in its solicitation that the information was not publicly available and would be held in confidence. Id. at 1313-14. Kerr-McGee replied and provided the material requested, and the firm prepared and released a report on the extent of competition in the industry, attempting to demonstrate that divestiture was not required or appropriate. Id. at 1314.
The Kirkland firm, however, also represented Westinghouse Electric Corporation. Id. at 1313. On the same day that the firm released the report on behalf of the Institute, it filed suit on behalf of Westinghouse against Kerr-McGee and others, alleging they were acting to establish an illegal conspiracy in restraint of trade. Id. at 1312. Shortly after the filing of the complaint, Kerr-McGee moved to disqualify the firm. Id. at 1313. The District Court denied the motion, but the Court of Appeals reversed. Ibid. The court, after noting that "[a] fiduciary relationship may result because of the nature of the work performed and the circumstances under which confidential information is divulged", id. at 1320, concluded that a fiduciary relationship existed between the Kirkland firm and Kerr McGee in view of the sharing of confidential information that had occurred. Id. at 1321. The nature of that relationship led the court to conclude that the Kirkland firm could not continue to litigate against Kerr-McGee. Id. at 1322.
The Committee completed its analysis in its discussion of a "vicarious" client and referred to Glueck, supra, with its "substantial relationship" test as a demonstration of the principle. Formal Op. 92-365, supra.
Spectraserv contends that it is a "direct" client of the Pearce firm in light of information it has supplied to the firm in conjunction with its representation of Lincoln North. It also contends that in the alternative, it should be considered a vicarious client under Glueck, supra. We are satisfied that in the context of this case, Spectraserv is neither a direct nor a vicarious client of the Pearce firm, and thus no conflict of interest exists.
Spectraserv stresses that it provided certain information to Lincoln North and analogizes that to the situation in Westinghouse, supra. We are unable to consider the two situations comparable. First, the information in question was not requested by the Pearce firm but by an individual named Karl Petry on behalf of the Association to assist it with an earlier challenge to another Kearny zoning ordinance. Spectraserv did not respond to the Pearce firm, but to the Association. Further, there was no representation that the information would be treated as confidential nor did Spectraserv request such treatment. Much of the information, moreover, such as real estate taxes and square footage, is publicly available. In addition, Spectraserv maintains a website from which it is possible to learn many of the details about its business operations. The only information that Spectraserv provided to Lincoln North that would not be readily available to a diligent researcher was the amount of federal and state income taxes that Spectraserv had paid. Spectraserv's tax liability, however, is totally unrelated to either of these two lawsuits. That an attorney may have come into possession of certain financial information about a member of an organization represented by the attorney does not create *688 a fiduciary, confidential relationship between the attorney and the member. United States v. Am. Soc'y of Composers, Authors and Publishers; IMO Richard Lewis Warren, 129 F.Supp.2d 327, 338 (S.D.N.Y.2001) (noting "Although this financial information may have been personal to Warren, because it was disclosed in order to receive advances from ASCAP, there was no reasonable expectation that the ASCAP attorneys would keep the information from the Society. Rather, it was expected that it would be disclosed to the Society in order for Warren to receive those advances"). Similarly, there could have been no reasonable expectation that the information Spectraserv supplied to Lincoln North would not be disclosed. Indeed, it was intended for disclosure, to advance the purposes of the Lincoln North litigation.
There is yet another distinction between the present matter and Westinghouse, supra. Kerr-McGee acted to disqualify the Kirkland firm almost immediately upon receipt of the Westinghouse litigation. Here, Spectraserv waited for almost a year to challenge the participation of the Pearce firm. If a conflict of interest existed due to Spectraserv's membership in Lincoln North, it was present at the time the complaint was filed in Ries v. Spectraserv and was not dependent upon the filing of the Lincoln North prerogative writ action. We are satisfied that Spectraserv was not a direct client of the Pearce firm.
The Committee, in its Opinion, discussed the concept of a vicarious client and referred to Glueck, supra, with its "substantial relationship" test as an example. Formal Op., 92-365, supra. But, as we have stated, there is not a substantial relationship between the two matters, and thus, Spectraserv was not a vicarious client of the Pearce firm.
The closest analogy our research has uncovered in reported New Jersey authority is Greate Bay Hotel & Casino, Inc. v. Atlantic City, 264 N.J.Super. 213, 624 A.2d 102 (Law Div.1993). Plaintiff in that case filed suit to compel Atlantic City to acquire a certain small parcel of land and keep it vacant for public access. Id. at 214, 624 A.2d 102. After suit was filed, an entity known as Square Brighton, which had a leasehold interest in the property, was permitted to intervene. Ibid. Square Brighton was represented by the firm of Clapp & Eisenberg, which also served as counsel to certain business trusts created by various Atlantic City casinos to operate a computerized link of their respective progressive slot machines. Ibid. Plaintiff Greate Bay was a member of several of these business trusts and sought to disqualify Clapp & Eisenberg from representing Square Brighton. Id. at 216, 624 A.2d 102. The trial court denied the application, concluding that the business trusts were separate entities and that the firm's representation of the entity did not create an attorney-client relationship between the members of the entity and the firm representing the entity. Id. at 221, 624 A.2d 102.
We find that analogy persuasive here. Lincoln North is an entity separate and apart from Spectraserv. Just as the firm of Clapp & Eisenberg was permitted to represent both the business trusts and the intervenor, the Pearce firm should be permitted to represent both Lincoln North and Ries in these wholly unrelated actions.

II
The second basis asserted by Spectraserv in support of the trial court's decision to disqualify the Pearce firm is what Spectraserv characterizes as the firm's "aggressive litigation tactics." In support of this assertion, Spectraserv points only *689 to certain descriptive terms used by the Pearce firm in its trial court brief opposing the motion to disqualify the firm. Having reviewed the record, we find nothing we would characterize as unprofessional or warranting the extreme step of disqualification. If hyperbole always resulted in disqualification, few attorneys would feel secure.

III
The final ground put forth by Spectraserv to justify the disqualification of the Pearce firm is its assertion that attorneys from the firm will be called upon to testify at trial. RPC 3.7 provides:
(a) A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness unless:
(1) the testimony relates to an uncontested issue;
(2) the testimony relates to the nature and value of legal services rendered in the case; or
(3) disqualification of the lawyer would work substantial hardship on the client.
(b) A lawyer may act as advocate in a trial in which another lawyer in the lawyer's firm is likely to be called as a witness unless precluded from doing so by RPC 1.7 or RPC 1.9.
In granting the motion, the trial court's only reference to this aspect was the comment that Spectraserv's counsel had made a representation that lawyers at the Pearce firm would be called as witnesses. Such a mere representation, however, does not satisfy the threshold requirements of RPC 3.7, which specifies a likelihood that a lawyer will be a necessary witness.
There are two prongs to this aspect of Spectraserv's argument in favor of disqualification. One relates to a letter written by Brian Fleisig, Esq. to the Ries tenant, Xtra Lease, Inc., and one relates to a dispute which occurred in connection with the firm's attempt to amend the complaint it had filed against Spectraserv.
We alluded earlier in our opinion to the fact that Ries had leased its property to a tenant, Xtra Lease, Inc., who had voiced complaints to Ries about the odors from the Spectraserv property. On December 31, 2003, some months prior to this litigation, Fleisig wrote to Xtra about its complaints. This letter stated in part:
Unfortunately, neither the statements nor your allegations give rise to an "environmental condition" permitting Xtra to lawfully terminate the Lease. . . . Specifically, the odors complained of do not constitute an environmental condition of the Demised Premises.
Although the operations conducted on the neighboring property by Spectraserv may cause certain odors, the odors have not been determined to be hazardous or harmful in any way. Moreover, Spectraserv has been conducting its operations prior to the time that Xtra entered into the Lease in 1998. Finally, there is nothing wrong with the environmental condition of the Demised Premises itself; there have been no violations of environmental laws (to the knowledge of the Landlord) and no hazardous substances exist. Thus, the condition of the Demised Premises has not changed since the inception of the Lease and does not give rise to a cause for termination of the lease.
We are unable to agree that Fleisig's authorship of this letter makes it likely that he will be a necessary witness at the trial. To the extent that Spectraserv seeks to use that letter to bolster its position that its activities do not affect the Ries property, it may seek to introduce the letter through the testimony of Xtra, who received it.
*690 The other prong of Spectraserv's motion relates to Ries's attempt to amend its complaint and join as a defendant Linden Roselle Sewerage Authority, one of Spectraserv's principal clients. Prior to filing a motion for leave to amend the complaint, an attorney at the Pearce firm called the Authority's counsel to inquire about the proper method for service. The Authority's counsel called Spectraserv, who perceived the call as an attempt to obtain leverage by threatening one of its clients. Spectraserv notified its attorneys who, in turn, served a subpoena to take Fleisig's deposition and to disqualify the firm.
From the perspective of appellate review, it is impossible to resolve the conflicting assertionsthat of the Pearce firm that the telephone call to the Authority's counsel was merely an attempt to find out if that firm would accept service of process, or that of Spectraserv's counsel that it was an attempt to convey to the Authority that transacting business with Spectraserv would subject it to litigation. This is particularly so in light of the fact that Spectraserv did not include in its moving papers a certification from the attorney for the Authority who had received the telephone call in question. Rather, it relied upon a certification from one of its attorneys, relaying information allegedly conveyed to him by the Authority's lawyer. Such a hearsay certification does not supply an adequate basis for the drastic relief granted.
For the reasons stated, the order under review is reversed, and the matter is remanded to the trial court for further proceedings in accordance with this opinion. We do not retain jurisdiction.
Reversed and remanded.
NOTES
[1] For purposes of this opinion, it is not necessary to distinguish between Spectraserv, Modern and their other allied business entities joined in this litigation, and we shall simply refer to Spectraserv.
[2] RPC 1.7(a) sets forth the general rule on conflict of interest, while RPC 1.7(b) sets forth the parameters under which a lawyer may represent a client despite the existence of a concurrent conflict of interest. We assume the trial court's reference to RPC 1.7(b) in its oral opinion was an inadvertent slip of the tongue.