**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0198-25

WENDY ANN LICOLLI and
VINCENT LICOLLI,

     Plaintiffs-Respondents,

v.

ATLANTIC REGIONAL
MEDICAL CENTER, THE
ROTHMAN ORTHOPAEDICS
INSTITUTE, DR. BARRETT
WOODS, M.D., GABRIELLE C.
MCINTYRE, P.A.C., A.M.I.
ATLANTIC CARE, and DR.
DANIEL J. MIZRAHI, M.D.,

     Defendants,

and

DR. TODD J. LUYBER, D.O.,

     Defendant-Appellant.

_____

Submitted December 9, 2025 – Decided January 29, 2026

Before Judges Rose and DeAlmeida.

On appeal from interlocutory orders of the Superior Court of New Jersey, Law Division, Atlantic County, Docket No. L-0249-21.

Buckley Theroux Kline & Cooley, LLC, attorneys for appellant (Sean P. Buckley and Michael P. Opacki, on the brief).

Lomurro Munson, LLC, attorneys for respondents (Jonathan H. Lomurro, of counsel and on the brief; Spencer A. Sink, on the brief).

PER CURIAM

On leave granted, defendant Todd J. Luyber, D.O., appeals from two Law Division orders: (1) the July 9, 2025 order disqualifying Buckley, Theroux, Kline & Cooley, LLC (BTKC) as his counsel in this medical malpractice action; and (2) the August 8, 2025 order denying his motion for reconsideration of the July 9, 2025 order. We affirm.

I.

On January 26, 2021, plaintiffs Wendy Ann Licolli and Vincent Licolli filed a complaint in the Law Division alleging medical malpractice claims against several defendants, including Luyber.[1] On March 24, 2021, BTKC filed an answer on behalf of Luyber.

---

[1] The parties did not include the complaint in their appellate appendices.

2

A-0198-25

On May 13, 2021, the court issued a case management order setting a February 1, 2022 deadline for service of plaintiffs' expert reports. The parties thereafter engaged in discovery. William Theroux, an attorney at BTKC, conducted depositions of both plaintiffs, and appeared on behalf of Luyber at the depositions of defendants Daniel Mizrahi, M.D., Barrett Woods, M.D., and Gabrielle McIntrye, P.A.C. Theroux also defended Luyber's deposition.

On March 31, 2022, Mizrahi and defendant A.M.I. Atlantic Care moved for summary judgment based on plaintiffs' failure to serve an expert report by February 1, 2022. Plaintiffs opposed the motion and cross-moved to extend discovery.

On May 3, 2022, the court entered an order denying the summary judgment motion and extending the discovery end date. The court ordered plaintiffs to serve their expert reports on or before August 1, 2022. On July 8, 2022, the court extended the discovery deadline, ordering plaintiffs to serve their expert reports on or before November 1, 2022.

From July 22, 2022, to November 1, 2022, Theroux conducted, or attended on behalf of Luyber, eight depositions. Another BTKC attorney attended an additional deposition on behalf of Luyber during that period.

3

On November 2, 2022, the court entered an order extending discovery, and ordering plaintiffs to serve their expert reports on or before March 3, 2023. Thereafter, Theroux attended a deposition on behalf of Luyber.

On November 18, 2022, plaintiffs supplemented their responses to interrogatories by producing medical records of Arien Smith, M.D., who treated Wendy, and had been named as a potential fact witness.[2] Plaintiffs did not identify Smith as an expert witness.

On December 15, 2022, plaintiffs further supplemented their responses to interrogatories by, among other things, producing additional medical records of Smith's treatment of Wendy. Again, plaintiffs did not identify Smith as an expert witness.

On March 17, 2023, the court entered an order extending discovery and ordering plaintiffs to serve their expert reports on or before June 2, 2023.

On June 19, 2023, the court entered an order extending discovery and ordering plaintiffs to serve their expert reports on or before August 1, 2023. Thereafter, Theroux attended a deposition on behalf of Luyber.

---

[2] Because plaintiffs share a surname, we refer to Wendy by her first name. No disrespect is intended.

A-0198-25

On September 22, 2023, the court entered an order extending discovery and ordering plaintiffs to serve their expert reports on or before January 31, 2024. Thereafter, Theroux and another BTKC attorney attended depositions on behalf of Luyber.

On February 16, 2024, the court entered an order extending discovery and ordering plaintiffs to serve their expert reports on or before March 29, 2024.

On March 27, 2024, plaintiffs moved for an extension of the deadline for submission of their expert reports. On April 12, 2024, the court denied the motion, but revised the February 16, 2024 order to permit plaintiffs to serve their expert reports on or before June 15, 2024. Thereafter, Theroux attended a deposition on behalf of Luyber.

On July 5, 2024, the court granted plaintiffs' motion to compel the deposition of Sandra Pagan. As a result, the court entered an order extending discovery and ordered plaintiffs to serve their expert reports on or before September 7, 2024. Thereafter, a BTKC attorney attended a deposition on behalf of Luyber.

On August 16, 2024, the court entered an order extending discovery and ordering plaintiffs to serve their expert reports on or before October 1, 2024.

A-0198-25

Plaintiffs thereafter served the reports of two experts, Randy Tartacoff, M.D., and Adam Hecht, M.D.

On October 9, 2024, the court entered an order setting a deadline for service of defendants' expert reports and the depositions of defendants' experts. The order did not contemplate the service of an additional expert report by plaintiffs.

On November 6, 2024, BTKC filed an answer on behalf of Smith in an unrelated medical malpractice action. No BTKC attorney representing Smith in the unrelated matter was involved in the representation of Luyber in this matter.

On January 13, 2025, Theroux conducted Tartacoff's deposition. On January 16, 2025, another BTKC attorney conducted Hecht's deposition.

On January 27, 2025, plaintiffs, without leave of court, served an expert report prepared by Smith. Although BTKC was representing Smith in the unrelated matter, neither Smith, Theroux, BTKC, nor plaintiffs' counsel notified the court of the potential conflict posed by Smith's appearing as an adverse witness to Luyber. Presumably, although in possession of documents relating to this matter bearing BTKC's name, Smith did not notify plaintiffs' counsel he was represented by BTKC in the unrelated matter. In addition, Theroux did not

6

recognize Smith as a client of BTKC or conduct a conflict check when he received Smith's expert report.

Luyber subsequently moved to bar Smith's expert report, arguing only it was filed beyond the deadline established by the court.

In February 2025, Theroux conducted the deposition of two additional experts previously identified by plaintiffs.

On February 21, 2025, the court entered an order denying Luyber's motion to bar Smith's expert report. In a written decision, the court found plaintiffs made a diligent effort to obtain Smith's report prior to the deadline and did not intend to mislead Luyber by not providing notice they intended to name Smith as an expert witness. The court permitted Theroux to depose Smith and serve a responding expert report.

Between February 25, 2025, and April 3, 2025, Theroux conducted, or attended on behalf of Luyber, seven depositions of experts. Another BTKC attorney attended an additional expert deposition on behalf of Luyber.

On April 9, 2025, Theroux conducted Smith's deposition. At the time, Theroux was not aware Smith was represented by BTKC in the unrelated matter. Theroux did not conduct a conflict check prior to the deposition. An attorney

A-0198-25

from BTKC thereafter attended two additional expert depositions on behalf of Luyber.

On May 28, 2025, Mizrahi and defendant A.M.I. Atlantic Care (AMI) moved for summary judgment. Prior to oral argument on the motion, Theroux learned BTKC was representing Smith in the unrelated matter. Theroux advised counsel for all parties of the dual representation via letter. He advised the court on July 2, 2025, when counsel was present for oral argument on the summary judgment motion.

On July 9, 2025, the court sua sponte entered an order disqualifying BTKC as Luyber's counsel. In an oral decision, the court found it was a "clear conflict of interest" for BTKC to subject Smith to a deposition and potentially cross-examination at trial as an expert for an opposing party while simultaneously representing Smith. With respect to the remedy to address the conflict, the court stated:

> I can understand if . . . plaintiff[s] served the report of . . . Smith and [BTKC] gets that report and per whatever policy or procedure that firm has, they do a conflict check and they realize that . . . Smith is a . . . current client of theirs and they represent him [in] a malpractice action.
>
> If that had happened and they sent a timely letter to [plaintiffs' counsel], I could see then saying okay, he

A-0198-25

has[ not] been deposed, let [plaintiffs] get more time, plaintiff[s] get another expert.

That was[ not] done in this case . . . .

The report was served and I guess no conflict check was done [and a conflict was] not . . . recognized.

Smith is then deposed and I do[ not] know what happened at that deposition. I do[ not] understand how a doctor could sit there and [not] say . . . this is the law firm who[ is] asking me questions that actually represents me [in] a malpractice action.

The court found BTKC's "late determination" of the conflict – after Smith's deposition, the filing of a summary judgment motion, and the court setting a firm trial date – militated against requiring plaintiffs to bear the expense of retaining a new expert. Instead, the court determined the balance of interests favored disqualification of BTKC as Luyber's counsel. The court also denied Mizrahi and AMI's motion for summary judgment.

Luyber moved for reconsideration of the July 9, 2025 order, arguing BTKC's representation of Smith in the unrelated matter while Smith served as plaintiffs' expert witness was not a conflict of interest. In addition, Luyber argued if a conflict existed, the balance of factors favored allowing BTKC to remain as his counsel, while permitting plaintiffs to retain a new expert to replace Smith.

9

In support of the motion, Luyber filed a certification in which he attested: (1) BTKC provided legal representation to his "group[,]" Atlantic Emergency Associates, and "providers within [his] group" for approximately fifteen years; (2) BTKC and Theroux represented him in prior medical malpractice actions; (3) "[o]ver the years [he] developed an excellent rapport" with BTKC; (4) based on his longstanding relationship with BTKC, he specifically requested the firm and Theroux represent him in this matter; (5) in or around June 2025, he was advised Theroux was transitioning to retirement; (6) because Theroux was planning to retire, Luyber met with Sean Buckley of BTKC, who he requested represent him in this matter; and (7) disqualifying BTKC from representing him in this matter would cause severe and irreparable injury to his defense.[3]

On August 8, 2025, the court entered an order denying Luyber's motion for reconsideration. In an oral decision, the court stated:

> I balanced these equities and find that it was [BTKC's] . . . failure to do a conflict check at each time that you could have that puts us in this position . . . .
>
> Now, I do[ not] think it is in any way fair that [plaintiffs] should have to go through the expense – and we[ are] not talking about . . . hundreds of dollars.

---

[3] Theroux subsequently retired from the practice of law and Buckley assumed representation of Luyber in this matter. Buckley is also named as trial counsel for Smith in the unrelated matter.

A-0198-25

You[ are] talking about thousands of dollars here. You[ are] talking about a case that has been litigated vigorously for four years . . . and numerous depositions, numerous experts. All of that has to be reviewed by the next expert and then he[ has] got to render a report, and then he[ is] going to be deposed.

I do[ not] find that that is fair to [plaintiffs] when your firm could have immediately, in December, notified [plaintiffs' counsel] . . . and then a remedy potentially could have been fixed . . . .

. . . .

. . . [I]f there is an added expense for the client because they have to get new counsel who has to get up to speed, well, . . . that is the price your firm pays for not doing a conflict check at every chance you could have.

We subsequently granted Luyber's motion for leave to appeal from the July 9, 2025, and August 8, 2025 orders.

Luyber argues "there [was] little to no risk of conflict" in BTKC's concurrent representation of Smith and Luyber because Smith's expert report addresses causation and not Luyber's standard of care of Wendy. According to Luyber, "[n]o information learned by other attorneys through the representation of . . . Smith was used against . . . Smith during his deposition" in this matter and "nothing the firm learns in representing . . . Smith will be used against him on cross at trial." In addition, Luyber argues "[t]here is no risk" the current

11

A-0198-25

representation will "materially limit[]" its responsibilities to Luyber as his counsel in this matter.

Luyber argues if there was a conflict, it was unfair and inappropriate to disqualify BTKC as his counsel because the firm was fully familiar with this complicated matter in which he faces exposure to significant damages and his defense will be compromised by retaining replacement counsel. In addition, he argues BTKC, with which he has a longstanding relationship, is his choice of counsel, which should be preserved by the court. Luyber also argues he is blameless for BTKC's failure to identify the conflict when plaintiffs produced Smith's report and should not be penalized for the firm's error.

## II.

> The review of a motion for disqualification requires a court "to balance competing interests, weighing the 'need to maintain the highest standards of the profession' against 'a client's right to freely choose his [or her] counsel.'" Dewey v. R.J. Reynolds Tobacco Co., 109 N.J. 201, 218 (1988) (quoting Gov't of India v. Cook Indus., Inc., 569 F.2d 737, 739 (2d Cir. 1978)). "[A] person's right to retain counsel of his or her choice is limited in that 'there is no right to demand to be represented by an attorney disqualified because of an ethical requirement.'" Ibid. (quoting Reardon v. Marlayne, Inc., 83 N.J. 460, 477 (1980)).
>
> [Comando v. Nugiel, 436 N.J. Super. 203, 213 (App. Div. 2014) (alteration in original).]

12

Whether counsel should be disqualified is an issue of law "subject to de novo plenary appellate review." City of Atlantic City v. Trupos, 201 N.J. 447, 463 (2010); State v. Hudson, 443 N.J. Super. 276, 282 (App. Div. 2015). Moreover, when "'the trial judge had no factual disputes to resolve on credibility grounds and only legal conclusions to draw,' reviewing courts do not 'defer to the trial judge's findings' or ultimate decision." Hudson, 443 N.J. Super. at 282 (quoting State v. Bruno, 323 N.J. Super. 322, 331 (App. Div. 1999)).

A court's determination of whether an attorney has a conflict of interest is guided by the Rules of Professional Conduct (RPCs). See Trupos, 201 N.J. at 461-62. The RPCs set forth the "enforceable standards of behavior for lawyers." State v. Rue, 175 N.J. 1, 14 (2002).

RPC 1.7 provides, in relevant part:

> (a) [A] lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:
>
> (1) the representation of one client will be directly adverse to another client; or
>
> (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client . . . .

[RPC 1.7(a).] [4]

"RPC 1.7 is rooted in the concept that '[n]o man can serve two masters . . . .'" Comando, 436 N.J. Super. at 214 (quoting Raymond L. Wise, Legal Ethics 272-73 (1970) (internal quotations omitted)). "RPC 1.7 reflects 'the fundamental understanding that an attorney will give complete and undivided loyalty to the client . . . .'" J.G. Ries & Sons, Inc. v. Spectraserv, Inc., 384 N.J. Super. 216, 223 (App. Div. 2006) (alteration in original) (quoting State ex rel. S.G., 175 N.J. 132, 139 (2003) (internal quotations omitted)).

We agree with the motion court's finding a concurrent conflict of interest under RPC 1.7(a)(2) was created by BTKC's concurrent representation of Luyber and Smith. Smith is expected to be called by plaintiffs as an expert witness. As Luyber's counsel, BTKC would be faced with cross-examination of Smith and calling into question Smith's credibility. That scenario poses the risk BTKC would undermine Smith's credibility with information obtained during the firm's representation of Smith in the unrelated matter. BTKC's decision to impeach Smith's credibility would be contrary to its responsibility to protect its client's (Smith's) interests. In addition, BTKC's cross-examination of Smith

---

[4] A lawyer may represent a client despite the existence of a concurrent conflict in circumstances not applicable here. RPC 1.7(b).

could be fodder for counsel in the unrelated matter to undermine Smith's credibility should that matter be tried, further harming Smith's interests.[5]

Further, the BTKC attorney conducting the cross-examination of Smith in this matter might refrain from rigorous efforts to undermine his credibility to the detriment of Luyber's interests. An inclination to protect his client (Smith) could dilute the vigorous defense of his client (Luyber). The conflict is readily apparent.

Nor do we find error in the motion court's decision to remedy the conflict by disqualifying BTKC as Luyber's counsel. We agree with the court's conclusion BTKC is at fault for failing to identify the concurrent representation when plaintiffs identified Smith as an expert witness. The record is silent with respect to the procedures in place at BTKC to identify conflicts at the time Smith was first named as an expert. Nor does the record contain an explanation of why, if such procedures were in place, the conflict was undetected. The situation was compounded when Theroux conducted Smith's deposition apparently without a conflict check. Because of the firm's oversights, expert discovery was completed and a summary judgment motion filed while the conflict existed.

---

[5] Theroux deposed Smith in this matter while the conflict from the concurrent representation existed. That deposition testimony might undermine Smith's credibility in the unrelated matter.

A-0198-25

The motion court balanced the competing interests, including Luyber's right to counsel of his choosing, and came to the reasonable conclusion the conflict would be resolved through BTKC's disqualification. The court adjourned the trial to provide Luyber time to retain replacement counsel and for that attorney to review the file. There is no suggestion in the record Luyber would be unable to retain competent counsel to defend his interests in his matter. While we acknowledge this solution will result in delay and increased costs, the same would be true were the court to implement Luyber's proposal to order plaintiffs to retain a new expert witness. Inevitably, curing the conflict will result in costs. The motion court's decision to have Luyber bear the brunt of those costs is supported by the record.[6]

We turn to Luyber's appeal of the August 8, 2025 order denying his motion for reconsideration. The July 9, 2025 order was interlocutory. As the Supreme Court explained, "[b]y definition, an order that 'does not finally determine a cause of action but only decides some intervening matter pertaining to the

---

[6] We note Luyber's observation that Smith, while in possession of documents relating to this matter on which BTKC's name appeared, did not notify either plaintiffs' counsel or BTKC of the concurrent representation. We do not agree, however, with the suggestion plaintiffs should be burdened with retaining a new expert because Smith, a physician, did not identify BTKC's concurrent representation and appreciate the legal significance of the resulting conflict of interest.

16                                                              A-0198-25

cause[,] and which requires further steps . . . to enable the court to adjudicate the cause on the merits[,]' is interlocutory." Moon v. Warren Haven Nursing Home, 182 N.J. 507, 512 (2005) (alternations in original) (quoting Black's Law Dictionary 815 (6th ed. 1990)); see also Wein v. Morris, 194 N.J. 364 (2008).

A trial court "has the inherent power, to be exercised in its sound discretion, to review, revise, reconsider and modify its interlocutory orders at any time prior to the entry of final judgment." Johnson v. Cyklop Strapping Corp., 220 N.J. Super. 250, 257 (App. Div. 1987). As Judge Pressler explained, "the strict and exacting standards of R. 4:50" do "not apply to interlocutory orders entered prior to final disposition." Ibid. Nor do the limitations of Rule 4:49-2 apply to requests for relief from interlocutory orders. Sullivan v. Coverings & Installation, Inc., 403 N.J. Super. 86, 96-97 (App. Div. 2008). See also Del Vecchio v. Hemberger, 388 N.J. Super. 179, 188-89 (App. Div. 2006); Cummings v. Bahr, 295 N.J. Super. 374 (App. Div. 1996); D'Atria v. D'Atria, 242 N.J. Super. 392 (Ch. Div. 1990). We review the denial of a motion for reconsideration of an interlocutory order for an abuse of discretion. Johnson, 220 N.J. Super. at 263-64.

The court adequately explained why it was not persuaded by the arguments Luyber raised in his motion for reconsideration. We have addressed

A-0198-25

and rejected those arguments in our discussion of the July 9, 2025 order. The court acted within its discretion when it denied Luyber's reconsideration motion.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

A-0198-25