**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5655-18T2

JACQUELINE ORTIZ,

    Plaintiff-Appellant,

v.

LOURDES G. OTIS,
LGO PROPERTIES LLC,
and 6 W END AVE LIMITED
LIABILITY COMPANY,

    Defendants-Respondents.

_____

Submitted March 2, 2020 – Decided April 24, 2020

Before Judges Sumners and Natali.

On appeal from an interlocutory order of the Superior Court of New Jersey, Law Division, Bergen County, Docket No. L-0068-19.

Jean A. Amagsila, attorney for appellant.

Post Polak, PA, attorneys for respondents (David Lawrence Epstein, of counsel and on the brief).

PER CURIAM

On leave granted, plaintiff Jacqueline Ortiz appeals from April 29, 2019 and June 27, 2019 Law Division orders: 1) denying her motion to strike defendants Lourdes Otis's, LGO Properties LLC's (LGO), and 6 W. End Ave. LLC's (6 W. End Ave.) late amended answer and to disqualify defendants' counsel, David L. Epstein, Esq. (Epstein) of Post Polak, P.A. (Post); and 2) granting defendants' motion to disqualify her counsel, Jean Amagsila, Esq. (Amagsila). After considering the parties' legal arguments against the record on appeal, we affirm in part and vacate and remand in part.

I.

We discuss the facts gleaned from the motion record to provide context for our opinion. Plaintiff entered a lease with defendants to reside in a multifamily residence in Bogota. LGO and 6 W. End Ave. owned and operated the residence, and Lourdes Otis was the registered President of both entities. Plaintiff resided at the unit until January 2017 as a Section 8 tenant. At all relevant times, including the current appeal, plaintiff was represented by Amagsila.

The underlying litigation stems from plaintiff's alleged injuries caused by "black mold growing in the bedrooms." In 2016, plaintiff wrote to the Bergen County Housing Authority and the Bogota Health Department regarding the

A-5655-18T2

condition of the property. A few days later, the Health Department sent a violation notice to Lourdes Otis regarding the existence of a "[m]old-like substance . . . in one of the apartments." According to defendants, around this time, plaintiff failed to pay rent, and LGO issued her a notice to quit the premises. Shortly thereafter, defendants instituted summary eviction proceedings against plaintiff. At this time and throughout the underlying action, defendants were represented by Clyde Otis, a lawyer at Post and Lourdes Otis' son.

The parties settled the tenancy litigation with plaintiff agreeing to vacate the premises by November 30, 2016 in exchange for defendants being permitted to keep $1700 of the $2100 security deposit for repairs to the unit. Despite the settlement, plaintiff did not move out by November 30, 2016. Instead, upon the request of Amagsila, defendants permitted plaintiff to remain in the unit until December 31, 2016, provided she pay rent for that month. Despite the extension, plaintiff, in December 2016, filed a motion to stay the eviction until January 3, 2017, which defendants did not oppose. Plaintiff eventually vacated the premises on January 4, 2017.

Two years later, on January 3, 2019, plaintiff filed a complaint in the Law Division, naming Lourdes Otis, her daughter Ana I. Otis, LGO, and 6 W. End

Ave. as defendants.[1]  Plaintiff alleged negligence, property damage, breach of contract, and wrongful eviction, and sought compensatory and punitive damages, as well as costs and attorneys' fees.

LGO and 6 W. End Ave. failed to file timely answers, allegedly because they contacted an insurance company which took "many weeks" to determine that it would cover only the portions of the complaint relating to Lourdes Otis. Counsel for Lourdes Otis filed a timely answer on her behalf only on February 28, 2019.

On March 28, 2019, Epstein, who along with Clyde Otis, was a shareholder at Post, filed a motion to permit a late answer on behalf of defendants LGO and 6 W. End Ave.  In support of the motion, Epstein attached certifications from himself and Clyde Otis explaining the delay.  The proposed answer listed only Epstein as designated trial counsel.  In his certification, Clyde Otis stated that he "was directly involved in counseling [his] mother and a direct witness to many of the events and circumstances set forth in the [a]mended [c]omplaint" and described the factual scenario giving rise to plaintiff's complaint.  Further, he explained that because of the delay in the insurance

---

[1]  Plaintiff amended the complaint two weeks later, removing Ana Otis as a defendant after learning she had passed away.

company's review of the case, he was unable to apprise Epstein of the situation with enough time to file timely answers.

In response, plaintiff filed a cross-motion to strike defendants' answer and disqualify Epstein as defendants' designated trial counsel. Plaintiff alleged that Epstein had conflicts of interest in violation of the New Jersey Rules of Professional Conduct (RPC), specifically RPCs 1.7, 1.8, and 1.10, with defendants because Clyde Otis was Lourdes Otis's son and the registered treasurer of LGO and 6 W. End Ave. Plaintiff further maintained that Clyde Otis was disqualified because he was "likely to be a necessary witness," in violation of RPC 3.7. Plaintiff contended that the relationship between Clyde Otis and defendants disqualified Epstein from representing them.

In defendants' opposition to plaintiff's cross-motion, they argued that neither the RPCs nor legal precedent supported the conclusion that a conflict of interest existed or provided any basis to disqualify Epstein. Defendants noted that Epstein was designated as trial counsel because Clyde Otis "knows he may very well be a fact witness," and "thus is not handling this matter as counsel." Moreover, while defendants further suggested that "Amagsila's conflicts are serious enough that the [c]ourt could, on its own motion, disqualify her from the case" because she is a "material fact witness" who could "end up being a

5

[d]efendant on third party complaints," they filed no motion to that effect. In separate April 29, 2019 orders, the trial court granted defendants' motion to permit a late answer and denied plaintiff's cross-motion to strike and disqualify Epstein. The court provided no written or oral statement of reasons for its decision denying plaintiff's disqualification motion and did not conduct oral argument.

The following month, on May 20, 2019, plaintiff filed a "[m]otion to [a]lter or [a]mend" the April 29, 2019 order, pursuant to Rule 4:49-2. Substantively, however, plaintiff argued only against Amagsila's disqualification as counsel, as suggested (but not moved for) by defendants in their opposition to plaintiff's cross-motion to disqualify Epstein. While plaintiff's "legal standard" section provided discussed Rule 4:49-2 and the standard for reconsideration applications, the only point heading in its two-page "legal argument" section stated: "THIS OFFICE WILL NOT BE DISQUALIFIED AS TRIAL ADVOCATES pursuant to RPC 3.7 and 1.8(a)."

In this regard, plaintiff argued that: 1) disqualification of Amagsila "would impose an undue hardship on [plaintiff] due to her financial situation, medical condition, and current living situation"; 2) that Amagsila's testimony was "not 'necessary' and 'likely' as required by RPC 3.7" because "documents

6

A-5655-18T2

and other witnesses" may be introduced instead; and 3) "pursuing [plaintiff]'s interests in this type of litigation promotes public policy" because of her status as a Section 8 recipient.

In support of her motion, plaintiff attached documents indicating that Lourdes Otis was the President of LGO and 6 W. End Ave., copies of the court's April 29, 2019 orders, and paperwork indicating that plaintiff was a Section 8 recipient and sought assistance from the Bergen County Fair Housing Council. Plaintiff also contended that defendants' actions caused her to lose her housing voucher, forcing her to move out of state to obtain affordable housing.

In addition to opposing plaintiff's motion, defendants also filed a cross-motion to disqualify Amagsila as plaintiff's counsel pursuant to RPC 3.7(a). In support of their opposition and cross-motion, defendants contended that "[p]laintiff does not even pretend to have 'newly discovered evidence'" or "point to any fact or precedent that the [c]ourt overlooked" in issuing its April 29, 2019 orders. Defendants also argued that Amagsila should be disqualified as plaintiff's counsel "given her undeniable role as a material fact witness" regarding the tenancy action. Defendants further maintained that the "substantial hardship" exception to RPC 3.7(a) did not apply merely because "her client would have difficulty finding another attorney." Defendants attached

a copy of plaintiff's complaint and a certification from Clyde Otis which included a copy of the parties' consent judgment in the eviction action, a copy of the request for defendants' warrant of removal, and emails between Clyde Otis and Amagsila regarding plaintiff's tenancy action.

On June 27, 2019, again without oral argument, the trial court issued orders denying plaintiff's Rule 4:49-2 motion but granting defendants' cross-motion to disqualify Amagsila as plaintiff's counsel and indicated that defendant's cross-motion was unopposed. In its decision to deny plaintiff's motion, the court characterized the application as "nothing more than a request for reconsideration of [p]laintiff's previous cross-motion and opposition to [d]efendants' motion that led to the [c]ourt's April 29, 2019 [o]rders." Relying on Rule 4:49-2 and Cummings v. Bahr, 295 N.J. Super. 374, 384-85 (App. Div. 1996), the court explained that plaintiff introduced no "'newly discovered evidence' that was not available when she filed her opposition and cross-motion in April 2019." The court also found that plaintiff did not "point to any fact or precedent that the [c]ourt overlooked in granting [defendants'] motion . . . [and] denying [plaintiff's] cross-motion."

With respect to defendants' cross-motion to disqualify Amagsila, the court concluded that she was "a material fact witness and . . . disqualified as counsel

pursuant to RPC 3.7(a)." Initially, the court noted that "[n]o opposition was submitted to [d]efendants' [c]ross-[m]otion." The court detailed various portions of the complaint that alleged wrongful eviction and explained that Amagsila represented plaintiff throughout the tenancy action and reached the settlement. It further noted that because plaintiff asserted in the current case that her removal from defendants' property was "'forced' or 'involuntary,'" Amagsila's involvement in the tenancy action was "direct and material" because she "represented . . . [p]laintiff and communicated for her with the [l]andlord . . . in agreeing to [plaintiff's] voluntary departure . . . ."

Moreover, the court described Amagsila's role in plaintiff's tenancy action, finding that she "negotiat[ed] an extension of the occupancy period allowed under the settlement agreement after [p]laintiff failed to leave on the agreed-upon date" in which she proposed that defendants would retain plaintiff's security deposit in satisfaction of the additional month's rent. Based on the allegations in the complaint that "[d]efendants' retention of [p]laintiff's security deposit was unlawful," the court found that "Amagsila would be a witness" to explain how defendants' conduct was unlawful despite that "she herself proposed in writing, on behalf of [p]laintiff, that the [l]andlord should retain the full balance of the security deposit . . . ."

9

Finally, the court observed that the complaint asserted that defendants "allegedly engaged in unlawful rent increases, over-charges or 'double charges' of rent and other allegedly improper lease charges." Again, because Amagsila raised the same claims in the underlying tenancy action, the court determined that "testimony about her review of the outstanding lease charges and her negotiation of a final number owed would be highly relevant and material to [p]laintiff's current claim . . . ." We granted plaintiff's motion for leave to appeal the April 29, 2019 and June 27, 2019 interlocutory orders.

On appeal, plaintiff alleges that the trial court erred because it: 1) "fail[ed] to conduct a single evidentiary hearing for [either] disqualification motion"; 2) improperly denied plaintiff's motion to disqualify Epstein under RPC 1.7, RPC 1.8 and RPC 3.7; 3) incorrectly granted defendants' motion to disqualify Amagsila as she was neither a necessary witness nor a likely witness pursuant to RPC 3.7, and disqualification of Amagsila would "work substantial hardship on the client"; 4) erroneously granted defendants' motion to file a late amended answer and denied plaintiff's motion to strike defendants' late amended answer; and 5) denied plaintiff relief because "the public has a substantial interest in policies that allow attorneys to advocate for injured and aggrieved litigants like [plaintiff] who have limited resources to retain counsel."

II.

With respect to the trial court's April 29, 2019 order granting LGO's and 6 W. End Ave.'s motion to file a late amended answer, plaintiff argues that the court abused its discretion because it permitted those defendants to file an answer well after the expiration of the time permitted by Rule 4:9-1 despite receiving timely and proper service of the complaint.  We disagree.

Rule 4:9-1 "requires that motions for leave to amend be granted liberally." Kernan v. One Wash. Park Urban Renewal Assocs., 154 N.J. 437, 456 (1998). Motions for leave to amend "should generally be granted even if the ultimate merits of the amendment are uncertain."  G & W, Inc. v. Borough of E. Rutherford, 280 N.J. Super. 507, 516 (App. Div. 1995); see also Interchange State Bank v. Rinaldi, 303 N.J. Super. 239, 256 (App. Div. 1997) (explaining that motions for leave to amend should be liberally granted without consideration of the ultimate merits of the amendment).  Further, "the granting of a motion to file an amended complaint always rests in the court's sound discretion."  Kernan, 154 N.J. at 457.

In its April 29, 2019 order, the court indicated that it "considered the pleadings and materials submitted in support of and in opposition to . . . [the] motion," and concluded defendants established good cause.  It also noted in its

11

June 27, 2019 written decision that at the time it granted defendants' motion to file a late amended answer, "no default ha[d] been entered, discovery ha[d] only just begun[,] and process was served not long before the motion to extend was filed." These factual findings and attendant legal conclusions are amply supported by the record and, accordingly, the court did not abuse its discretion in permitting the filing of LGO's and 6 W. End Ave.'s belated answer.

## III.

With respect to plaintiff's cross-motion, she contends that Epstein should be disqualified because Clyde Otis is a "key and 'direct witness' in this litigation," violating RPC 3.7, and a conflict of interest between Clyde Otis and defendants has been established in violation of RPC 1.7. Further, plaintiff argues that Epstein violated RPC 1.8(a) because Post "entered into a business transaction" with defendants. Finally, plaintiff asserts that under RPC 1.10, "Epstein . . . [is] barred from representing the multiple [d]efendants in this matter" as he and Otis are members of Post and conflicts of interest are imputed to the entire firm.

A trial court's "determination of whether counsel should be disqualified is, as an issue of law, subject to de novo plenary appellate review." City of Atl. City v. Trupos, 201 N.J. 447, 463 (2010) (citing J.G. Ries & Sons, Inc. v.

Spectraserv, Inc., 384 N.J. Super. 216, 222 (App. Div. 2006)). Therefore, the trial court's decision on an attorney's disqualification is "not entitled to any special deference" on appeal. See Manalapan Realty, LP v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995) (citing State v. Brown, 118 N.J. 595, 604 (1990); Dolson v. Anastasia, 55 N.J. 2, 7 (1969); Pearl Assurance Co. v. Watts, 69 N.J. Super. 198, 205 (App. Div. 1961)).

According to Rule 1:6-2(f), "[i]f the court has made findings of fact and conclusions of law explaining [the court's] disposition of the motion, the order shall indicate whether the findings and conclusions were written or oral . . . ." The Rule directs courts to provide a statement of reasons supporting interlocutory orders "where explanation is required by reason of the nature of the matter." Pressler & Verniero, Current N.J. Court Rules, cmt. 7 on R. 1:6-2 (2020); see, e.g., Magill v. Casel, 238 N.J. Super. 57, 65 (App. Div. 1990) (holding, in the context of an application for judicial recusal, the "challenged judge who hears the motion should painstakingly set forth the . . . bases for the ultimate decision" in order to allow proper appellate review).

As to that portion of the court's April 29, 2019 order denying disqualification of Epstein, we conclude a comprehensive statement of reasons was required in light of the significant nature of the relief requested. Without

findings of fact and conclusions of law stated on the record, or a statement of reasons appended to the order, we cannot discern the basis for the court's ruling denying the motion to disqualify Epstein. See Magill, 238 N.J. Super. at 65. As a result, we vacate the trial court's April 29, 2019 order denying plaintiff's cross-motion to disqualify Epstein and remand for the court to consider the parties' arguments and issue a statement of reasons supporting its decision.

## IV.

Plaintiff further contends that the trial court improperly disqualified Amagsila as her counsel pursuant to RPC 3.7.[2] Specifically, she asserts that defendants could not have met the burden of showing that she was a necessary

---

[2] RPC 3.7 states:

> (a) A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness unless:
>
> (1) the testimony relates to an uncontested issue;
>
> (2) the testimony relates to the nature and value of legal services rendered in the case; or
>
> (3) disqualification of the lawyer would work substantial hardship on the client.
>
> (b) A lawyer may act as advocate in a trial in which another lawyer in the lawyer's firm is likely to be called as a witness unless precluded from doing so by RPC 1.7 or RPC 1.9.

or likely witness because the trial court did not conduct an evidentiary hearing and because "there are several other witnesses and documentary evidence available to introduce relevant evidence at trial." In this regard, she contends that Amagsila is not a necessary witness because other witnesses, such as plaintiff, Clyde Otis, "associates from the Fair Housing Council," various members of the Housing Authority of Bergen County, and others may testify. Plaintiff further argues that disqualification of Amagsila would create "substantial hardship" on plaintiff "because of her financial situation, medical, condition, and current living situation."

As noted, RPC 3.7 prohibits a lawyer, with certain exceptions, from acting as an advocate at a trial in which the lawyer will likely be a "necessary witness." "RPC 3.7 does not require certainty as to a lawyer's testimony; the plain language of RPC 3.7 requires only 'likelihood.'" Freeman v. Vicchiarelli, 827 F. Supp. 300, 302 (D.N.J. 1993). "A 'necessary' witness under [RPC] 3.7 is one whose testimony is unobtainable elsewhere." Annotated Model Rules of Prof'l Conduct R. 3.7 (2019); see also J.G. Ries & Sons, Inc., 384 N.J. Super. at 231 (App. Div. 2006) (deeming a lawyer's testimony regarding a letter he wrote not necessary as it could be introduced through the recipient); State v. Tanksley, 245 N.J. Super. 390, 394 (App. Div. 1991) (determining a criminal defense

attorney who witnessed client's statement not a necessary witness because the statement could be introduced through another witness and there was no dispute as to the statement's completeness or accuracy). The party seeking disqualification bears the burden of demonstrating that the disqualification is justified. Trupos, 201 N.J. at 462-63.

An exception to disqualification under RPC 3.7 exists if "disqualification of the lawyer would work substantial hardship on the client." RPC 3.7(a)(3). In determining whether a lawyer's disqualification would constitute "substantial hardship" to a client, courts examine "the amount of time and money invested by the client in his counsel, as well as . . . the proximity of the trial . . . ." Freeman, 827 F. Supp. at 304. In this regard, "[p]laintiff's difficulty in finding alternative counsel does not, in itself constitute 'substantial hardship.'" Id. at 305. In addition, a lawyer who is also a necessary witness will not be disqualified as a trial advocate under RPC 3.7(a) if counsel's testimony relates to an uncontested issue or if the proposed testimony relates to the "nature and value of legal services rendered in the case." See RPC 3.7(a)(1) and (a)(2).

Here, we conclude that further factual findings are necessary to determine whether disqualifying Amagsila was appropriate under RPC 3.7. Although the court's written decision concluded Amagsila was a necessary witness pursuant

16

to RPC 3.7(a), it failed to address whether disqualification of Amagsila would constitute substantial hardship under RPC 3.7(a)(3). Although we acknowledge that plaintiff's submission was not in technical compliance with Rule 1:6-3 as it was filed prior to defendant's cross-motion to disqualify, plaintiff nevertheless substantively opposed defendants' cross-motion in her initial brief, and included proof that plaintiff was of limited financial means as a Section 8 recipient. The court also failed to address the exceptions contained in RPC 3.7(a)(1) and (a)(2). Because we are vacating the June 27, 2019 orders disqualifying Amagsila and remanding for further factual findings, the court should also consider the arguments raised in plaintiff's May 19, 2019 brief as it does not appear the court evaluated those arguments, having treated defendants' cross-motion as unopposed.

In sum, we affirm the court's April 29, 2019 order granting defendants' motion to file a late amended answer. We vacate and remand, however, the trial court's April 29, 2019 order denying plaintiff's cross-motion to disqualify Epstein as counsel for LGO and 6 W. End Ave. On remand, the trial court should provide a statement of reasons, including factual findings, to amplify its bases for its decision. We also vacate and remand the court's June 27, 2019 order to the extent it granted defendants' cross-motion to disqualify plaintiff's counsel

for further factual findings including whether plaintiff would suffer substantial hardship pursuant to RPC 3.7(a)(3) if Amagsila were to be disqualified as well as necessary findings under RPC 3.7 (a)(1) and (a)(2).

In light of our decision, we need not address plaintiff's argument that the "public has a substantial interest in policies that allow attorneys to advocate for injured and aggrieved litigants like [plaintiff] who have limited resources to retain counsel."

Affirmed in part and vacated and remanded in part. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION